SMITH, Appellant, vs. BOARD OF TRUSTEES OF THE WISCON-
SIN VETERANS' HOME, Respondent.

*March 9—March 30, 1909.*

*Corporations: Veterans' Home: Discharge of inmate for misconduct:
Security for costs: Discretion.*

1. Corporations organized for purposes akin to that for which the
   Board of Trustees of the Wisconsin Veterans' Home was organ-
   ized have the right to prescribe reasonable rules governing the
   admission and discharge of inmates; and under sec. 1785, Stats.
   (1898), the proper officers may at any time discharge any such
   inmate when, in their judgment, it shall be for his interests
   or the interests of the corporation.

2. In an action against said corporation for damages for a wrongful
   discharge from the Home, it is *held* that a verdict was properly
   directed for defendant,—it appearing that the board of trustees
   had proceeded regularly, within its statutory powers, and in
   accordance with its by-laws, rules, and regulations in discharg-
   ing plaintiff because of misconduct in circulating false and
   scandalous reports concerning officials of the Home, to the
   detriment of the institution.

3. The fact that plaintiff was able to furnish the required security
   shows that there was no abuse of discretion in an order re-
   quiring him to give security for costs; and in the absence of
   such abuse the order should not be reversed.

APPEAL from a judgment of the circuit court for Waupaca
county: JOHN GOODLAND, Judge. *Affirmed.*

The defendant is a corporation organized for the purpose
of establishing and carrying on an institution for the mainte-
nance of destitute soldiers and sailors of the late Civil War
and their widows. Its articles of incorporation forbid the pay-
ment of dividends. Before the corporation began operation
the legislature of Wisconsin provided that when the Home
was established and put in operation there should be paid by
the state treasurer to the treasurer of the board of trustees of
said corporation $3 per week for the board of each inmate.
Later an appropriation of $50,000 was made for the Home.
The amounts paid by the state to the defendant corporation

aggregate a large sum. As a condition to the appropriation the state required the title to the lands of the Home to be vested in the state, and reserved the right to exercise certain visitatorial powers over the institution. A certain portion of the expense of maintaining the inmates of said Home was paid by the general government of the United States. The bylaws, rules, and regulations adopted for the management of the Home provided that all persons, members in good standing of the Grand Army of the Republic in the Department of Wisconsin and entitled to vote at the annual meeting of the department encampment, should be members of such corporation; that the board of trustees should hear and determine all appeals taken from the decisions of the commandant, and all grievances of members when made in person or in writing; and that where an appeal was taken from any sentence or act of the commandant he should be present at the hearing with the evidence on which his sentence or act was based. It was made the duty of the commandant to keep a docket called "Offenders' Docket," and to keep a complete history of every offense and offender. It was provided that no member should be discharged, suspended, or dealt with in any way without first having a hearing, and for this purpose a time and place was required to be fixed by the commandant at which to hear all complaints each day, and that a brief statement of evidence and witnesses should in each case be recorded. Further, that the commandant should have full power to summarily discharge, after trial, for the following offenses: First, habitual intoxication; second, bringing intoxicating liquors upon the grounds or having the same in possession without permission of the surgeon; third, wilful disobedience of orders of the commandant and insulting, violent, or abusive language to any officer, member, or employee; fourth, scandalizing in any manner the management of the Home. For violation of any of the foregoing rules the commandant was required to notify the offender to appear before him at a time

fixed for hearing complaints, and if found guilty the commandant was authorized to pass such sentence as he might deem just and proper, subject, however, to an appeal to the board. Any member desiring to appeal from the commandant's sentence might make a written appeal to the board of trustees. It was further provided that any member might be ordered dishonorably or summarily discharged by the board of trustees for wilful violation of rules and regulations governing the Home, and by the commandant in cases provided for in the rules. It was provided that abusive language against the board of trustees or officers of the Home should not be tolerated at any time or at any place, and should subject the offender to dishonorable discharge. Members having grievances or complaints of any kind against the Home were invited to present the same, with the assurance that every effort would be made to remove the grievance complained of, if found to exist. The total membership, as appears from the annual report of 1905, is 700.

The plaintiff was a soldier in the Civil War and was seventy-eight years of age at the time this action was begun. He was admitted to the Home in June, 1901, and remained an inmate until September, 1906, when he was dishonorably discharged. At the time he was admitted he was receiving a pension of $12 a month, and under the rules paid $4 of this to the Home until his marriage in August, 1901. He was a member of the Grand Army of the Republic in the Department of Wisconsin. In 1906 he was sent as a delegate from his Grand Army post to the state encampment at Marinette, and made a protest against the re-election of D. G. James as a member of the board of trustees, asserting that said James was criminally intimate with one Mrs. White, the matron of the Home. The plaintiff industriously circulated the report that said James and said matron were improperly conducting themselves. Plaintiff testified that he did not state that the facts were within his knowledge, but only that it was common

rumor that criminal intimacy existed between the parties involved. The proof to the effect that the statements were positively made and that plaintiff said he was prepared to prove them is, however, quite convincing. After the encampment was over the plaintiff was called before the board of trustees, at which time he claims he presented a petition asking for an investigation of the rumor concerning the conduct of Mrs. White and Mr. James. The evidence of what took place at said meeting is not fully preserved, and there is considerable conflict in the testimony as to what evidence was in fact produced. The request of the plaintiff for an investigation was denied, if any request was in fact made. It does not appear that at this meeting any evidence was produced which tended to show that the charge made by the plaintiff was in fact true, unless it was given by the witness Drown. At the regular meeting of the board in August a resolution was passed directing the commandant to notify the plaintiff that he must prove the statements made touching the character of officers of the Home and other statements derogatory to the best interests of the Home, and that unless he was able to prove such statements the commandant was directed to dishonorably discharge him from the Home. At a meeting held in September this resolution was rescinded, and it was resolved that the board investigate the statements made by the plaintiff at the aforesaid encampment and also certain statements alleged to have been made at other times since the meeting of the board held on the 9th of July. The plaintiff was called before the board, and all of the witnesses upon whom he relied, with one exception, to testify to the truth of the statements made in reference to Mr. James and Mrs. White were sworn. None of the witnesses gave any testimony tending to incriminate either of the parties, and the plaintiff apparently relied on rumor entirely as the foundation for the charges which he had made. The plaintiff failing to prove his charges he was dishonorably discharged. It also appears that at the September

meeting of the board he virtually defied the board to prevent him making statements such as he had theretofore made. It also appeared that between the time the encampment was held at Marinette and the date of the discharge of *Smith* from the institution he had persisted in making statements to the effect that there was a criminal intimacy between the parties heretofore named, and stated in substance and effect that the board did not dare discharge him from the institution.

The plaintiff brings this action against the defendant to recover damages for being wrongfully deprived of his home from and after the time he was discharged, and to compensate him for the expense he has already suffered and is likely to suffer in the future. The damages claimed amount to $5,000. At the close of the testimony the trial court directed a verdict for the defendant, and from the judgment entered upon such verdict plaintiff brings this appeal. The errors assigned are as follows: (1) In directing a verdict for the defendant. (2) In excluding the evidence of a certain witness. (3) In requiring plaintiff to file security for costs.

For the appellant there were briefs by *B. E. Van Keuren,* attorney, and *Charles H. Forward,* of counsel, and oral argument by *Mr. Van Keuren.*

For the respondent there was a brief by *Browne, Browne & Fisher,* and oral argument by *E. E. Browne.*

BARNES, J. If the plaintiff had been in possession of facts which reasonably induced the belief in his mind that the trustee, James, and the matron, Mrs. White, were criminally intimate or were guilty of unbecoming conduct, and complaint had been made in the proper manner and to the proper parties, his conduct might be characterized as courageous and commendable. An institution supported by the bounty of the state should be above suspicion in the respect complained of, and its inmates could ill afford to remain silent if reasonably convinced that it was being used to harbor the mistress

of a member of the governing body of the corporation.   Such reprehensible conduct was likely to be discovered sooner or later, and when discovered might well react upon the institution itself, the maintenance of which is a matter of moment to those being cared for.   So much is said by way of preface, lest what follows might be erroneously construed as intimating that members of the Wisconsin Veterans' Home must hold their peace on penalty of discharge when it is their duty to speak.

It is apparent from the record that before plaintiff attended the encampment of the Grand Army of the Republic at Marinette in June, 1906, he had heard rumors to the effect that illicit relations were being maintained between Mr. James and Mrs. White, but that he had no actual knowledge that such relations existed, and had nothing more substantial upon which to base his subsequent statements than the floating gossip of idle tongues.   He industriously circulated such rumors among the delegates attending the encampment.   While he denies, in a way, that he did more than to report the rumors he had heard, the evidence is overwhelming and convincing that he stated as a matter of fact that Mr. James and Mrs. White were guilty and that he could prove his statement by an abundance of witnesses if the opportunity were only afforded him.   At the close of the encampment at Marinette he wrote to T. J. Jeffers, an inmate of the Home, that he was satisfied that the rumor he testified he had circulated was "idle camp talk" indulged in "for the purpose of injuring Mrs. W., and that more than anything else," and that he "was dragged into it by a person" he believed he could depend upon as his friend.   At the meeting of the board of trustees of the Home in July, 1906, he was called before it, but the evidence is unsatisfactory as to what took place.   No full record of the proceedings was preserved, and there is dispute and confusion in the evidence as to what transpired.   It does appear that the plaintiff was admonished to discontinue further gos-

sip, and was told that were it not for his age and physical and mental condition he would be dishonorably discharged. This leniency evidently induced the belief in his mind that the board was afraid to discharge him, and he apparently continued to bruit the rumors he had been cautioned to desist from circulating. When given an opportunity at the September meeting to make good his accusations, he utterly failed to produce any proof that would justify him in persisting in making his charges.

Considering the age, the condition, and the infirmities of the inmates of this Home, it is to be expected that they will be treated with consideration and forbearance. Fault-finding is often a characteristic, if not a prerogative, of the aged and the infirm, and so long as it is not productive of harm it may well be treated as innocuous. But in an institution of this kind, usually containing 600 or 700 inmates, it is self-evident that some discipline must be maintained and that some wholesome restraint must be placed upon the anile tendency of the inmates to garrulity when it means detriment to the institution itself as well as irreparable injury to others. The fault of the plaintiff here was no idle maundering or mere peccadillo, and could not be overlooked by any self-respecting institution.

The defendant is an eleemosynary corporation organized under the laws of Wisconsin. Corporations organized for purposes akin to that for which defendant was organized have the right to prescribe reasonable rules governing the admission of inmates and also have the right to prescribe like rules pertaining to their discharge. Sec. 1785, Stats. (1898), provides that as to such corporations "the proper officers designated by the by-laws may, in their discretion, at any time discharge any such inmate when, in their judgment, it shall be for his interests or the interests of the corporation." The trustees were acting within their statutory powers and in accordance with their by-laws, rules, and regulations in making

the discharge. They seem to have proceeded regularly and without undue haste in making it, and the circuit court was right in directing a verdict for the defendant. The board was warranted in believing that the conduct of the plaintiff was reprehensible, and that the welfare of the institution demanded that he sever his connection with it.

Mr. James did not vote upon the resolution to discharge the plaintiff, and was not present when it was passed. There was no sufficient showing made to disqualify the other members of the board of trustees from acting because of interest or bias. *State ex rel. Starkweather v. Superior*, 90 Wis. 612, 64 N. W. 304; *State ex rel. Cook v. Houser*, 122 Wis. 534, 100 N. W. 964.

An order was made in the action requiring the plaintiff to give security for costs, which was complied with. It is urged that the order is erroneous. No exception was taken thereto. No exception need be taken to an order that is properly a part of the judgment roll. Sec. 2872, Stats. (1898). All orders and papers in any way involving the merits, and necessarily affecting the judgment, are properly a part of the judgment roll. Sec. 2898, Stats. (1898). On an appeal from a judgment, any intermediate order which involves the merits, and necessarily affects the judgment, appearing upon the record transmitted, may be reviewed without exception. Sec. 3070, Stats. (1898). It is difficult to see how the order in question either involved the merits of the action or affected the judgment rendered therein, and if it did not it can be reviewed only on exception being taken thereto. *Donkle v. Milem*, 88 Wis. 33, 59 N. W. 586. Had the plaintiff been unable to furnish the required security and had a judgment been entered dismissing his action for that reason, an entirely different question would be presented. The fact that the plaintiff was able to furnish the required security makes it self-evident that there was no abuse of discretion on the part of the trial court in making the order, and

in the absence of such abuse the order should not be reversed. *Simanek v. Nemetz,* 120 Wis. 42, 97 N. W. 508; *Colbeth v. Colbeth,* 117 Wis. 90, 93 N. W. 829; *Cullen v. Hanisch,* 114 Wis. 24, 89 N. W. 900; *Joint School Dist. v. Kemen,* 72 Wis. 179, 39 N. W. 131; *Heeron v. Beckwith,* 1 Wis. 17.

Some other questions are treated in the briefs, but the conclusion we have reached renders discussion of them unnecessary.

*By the Court.*—Judgment affirmed.