## No. 11,956.

### BOARD OF COMMISSIONERS OF THE COLORADO STATE SOLDIERS' AND SAILORS' HOME *v.* DUNLAP, ET AL.

Decided March 5, 1928.

Action to discharge an order of the board of commissioners of the State Soldiers' and Sailors' Home. Judgment for plaintiffs.

### *Reversed.*

1. POSTMASTERS—*Office Property.* Property rights of the United States in a building in which a post office is located are not rights of the postmaster, as an individual, to assert or defend.

2. CERTIORARI—*When Applicable.* Ordinarily a writ of certiorari runs to a judicial body or tribunal only.

3. SOLDIERS' AND SAILORS' HOME—*Board—Powers.* The board of commissioners of the Soldiers' and Sailors' Home is primarily, if not exclusively, an administrative, not a judicial, body.

4.   CERTIORARI—*Purpose.* The scope of investigation under a writ of cer-
     tiorari is limited to jurisdictional questions only. If the tribunal to
     which the writ is directed had jurisdiction of the subject matter and
     of the parties, and regularly pursued its authority, its judgment is
     conclusive.

5.   SOLDIERS' AND SAILORS' HOME—*Commissioners—Powers.* The Sold-
     iers' and Sailors' Home is for the care of honorably discharged
     soldiers and sailors. The board of commissioners has power to make
     rules and regulations, and courts will not interfere with its action
     unless it is plainly manifest that its members have abused the discre-
     tion with which they are vested.

6.   CONSTITUTIONAL LAW—*Trade—Soldiers' and Sailors' Home.* If the
     inmates of the Soldiers' and Sailors' Home have the constitutional
     rights, as citizens of the United States, to engage in any lawful
     business they choose, this does not include the right to conduct it in
     or on the property of the home.

*Error to the District Court of Rio Grande County, Hon.
J. C. Wiley, Judge.*

Messrs. STEPHENSON & MARTIN, for plaintiff in error.

Mr. MERLE M. MARSHALL, for defendants in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the
court.

ALBERT C. Dunlap was a member, and Luella M. Dun-
lap, his wife, was an inmate, of the Colorado State
Soldiers' and Sailors' Home near Monte Vista. They
were respectively postmaster and assistant postmaster
at Homelake post office which is located on the grounds
of the institution and is housed in one of its buildings.
Mr. Dunlap was also quartermaster of the home. For
some time they had been selling various articles of mer-
chandise in the building where the post office was, whether
with or without the consent of the board of commissioners

of the home is not disclosed. June 3, 1926, the board, acting in pursuance of the authority conferred upon it by section 699, C. L. 1921, made and entered the following order: ''That on and after the first day of July, 1926, the sale of merchandise will be positively prohibited on the home grounds, by private individuals.'' The statute cited reads: ''The commissioners shall prepare and carefully digest and mature a system of government for said home, embracing all such rules, regulations and general laws as they may deem necessary for preserving order, enforcing discipline and preserving the health of such disabled soldiers, sailors or marines, as may be received at the home.''

The parties are in accord that the prohibitive order was intended to, and did, apply both to Dunlap and his wife, since she was duly admitted as an inmate of the home, which the statute in the circumstances designated therein authorizes. They claim that the order is ultra vires and beyond the board's jurisdiction. After being notified of its issuance they refused to comply with or obey it until such time as they deemed would be sufficient to enable them to dispose of the stock of merchandise they then had on hand, or until the matter in dispute should otherwise be determined. The board, not acquiescing in the modification of the order which the Dunlaps assumed to make, on October 18, 1926, made the order complained of discharging them from the home for their refusal to conform to such requirements. They say that it was for the convenience of the members of the home that they were engaged in this business and, in addition thereto, if forced to leave the home they will be unable to perform the duties of their respective offices.

The foregoing facts, in substance, appear in the petition which the Dunlaps filed in the district court of Rio Grande county for a writ of certiorari—in the absence of any other remedy—to have the discharge order vacated. The writ was issued by the court. The respondent board's demurrer thereto was overruled. It then made its re-

turn in which, inter alia, it is alleged that in a letter to its president the Dunlaps, petitioners in this writ, state that their substantial objection to the order against selling, and the discharge thereunder, is that such orders are, and each of them is, arbitrary and beyond the board's jurisdiction in that thereby they are deprived, as citizens of the United States, of their constitutional right to pursue, on the grounds of the home, and in one of its buildings, their lawful business of selling merchandise for the purpose of making an honest livelihood. The return of the board further sets up that in response to the board's inquiry for advice, the attorney general of the state gave it as his opinion that the respondent board has the power, under the section of the statute above quoted, to discharge members and inmates of the home for refractory or unbecoming conduct, provided they have been given due notice of the charge against them and have an opportunity to be heard, and if the board does not act in an arbitrary manner or in bad faith, citing, among other authorities, 5 C. J. 369; *Black v. Linn,* 17 S. D. 335, 339, 96 N. W. 697; *Smith v. Board of Trustees,* 138 Wis. 628, 634, 120 N. W. 403. The attorney general suggested that a hearing be had by the board before a final discharge is ordered.

Thereupon the charges in question were preferred by the commander of the home against the petitioners for violation of the selling order. In response to notice the Dunlaps, petitioners in the writ, appeared in person and the matter came on for hearing before the board, the charges were read by the president and the petitioners admitted that they were guilty as charged. Whereupon the board entered an order to the effect that though the petitioners had been duly directed to cease selling merchandise on the grounds, they had, in direct violation of the rule and regulation, and contrary thereto, persisted in doing so and, therefore, should be, and were, expelled from the home. No evidence, except the record evidence as above stated, was heard by the district court. Upon

the same that tribunal annulled the prohibitive order against selling and set aside the discharge or expelling order.

Whatever be the relative rights as between the United States and the owner of the building in which a post office is housed, they are not in issue here. The United States is not a party to this proceeding and is not here joining the petitioners in their grievance. We, therefore, do not assume to pass upon the rights of the federal government. Whether this post office on the grounds of the state home, in one of its buildings, is one that is established by the post office department of the United States, or whether petitioners hold their commission from the postmaster general, or are handling outgoing and incoming mail matter of the home under an arrangement with the postmaster of the county seat at Monte Vista, we are not advised. It is enough to say that the rights of the United States, if any, are not the property right of the petitioners to assert or wage. They are neither asserted nor decided in this proceeding.

The respondent board, as above stated, though questioning the right of the petitioners to employ the writ of certiorari as a remedy for their alleged injury, is not disposed to object to its use in this proceeding. Ordinarily the writ runs to a judicial body or tribunal only. The board of commissioners of this home is primarily, if not exclusively, an administrative, not a judicial, board. But possibly because our General Assembly, in the practice of medicine statute, specifically awards to practitioners the remedy of certiorari to review adverse decisions of the Medical Board affecting them, though the Board of Medical Examiners is usually considered to be an administrative body, the Soldiers' and Sailors' Board here, through its attorney, interposes no objection to it. We might for ourselves do so, but without deciding that the writ would lie if objection thereto was insisted upon, since a speedy decision is desired by the board for its own guidance in the management and to save expenses,

we have concluded to pass upon the merits.  It is pertinent, however, to say that whenever the code writ of certiorari is issued, the inquiry thereunder is not to ascertain facts, or to pass upon disputed facts.  The scope of the investigation therein is limited to jurisdictional questions only.  If the board of tribunal to which the writ is directed has acted within, or not in excess of, its jurisdiction, and has not abused its discretion, that is, has regularly pursued its authority, its judgment may not be set aside for error in the conclusion reached or for a wrong finding of facts.  Conversely stated, if it had jurisdiction of the subject matter, and of the parties, and regularly pursued its authority, its judgment is conclusive.

The Soldiers' and Sailors' Home, as established by our statute, is for the care and treatment of honorably discharged soldiers and sailors of the specified wars in which the United States has been engaged.  To the board of commissioners, created by the statute, as the governing body is given the exclusive management of the institution.  It is the arm of the sovereign state in administering its charity.  Upon it is conferred the power of making such regulations and rules as it deems suitable and necessary to preserve order, enforce discipline and preserve the health of its inmates.  The Supreme Court of Iowa, in *Ball v. Evans,* 98 Ia. 708, 68 N. W. 435, said, in view of such a statute, which is substantially the same as ours, courts should not interfere with the action of commissioners, unless it is plainly manifest that they have abused the discretion with which they are vested.  For other authorities see 5 C. J. p. 368, et seq.  Presumptively this rule or regulation is valid.  There is not a particle of evidence that the board acted arbitrarily or in bad faith or intended to humiliate or deprive the petitioners of any right.  Inferentially it may appear, as we think it does, that the board itself makes, or desires to make, all necessary and proper sales of merchandise to its members and inmates; and that, to permit sales by

one member to other members would, or might, lead to extortion, or to illegal sales, cause confusion, and demoralize discipline and endanger the health of the very persons for whose benefit the institution was created. Certainly the board has exclusive control of its grounds and buildings, and may determine by whom and for what purpose they may be used. If the petitioners have the constitutional right as citizens of the United States to engage in any lawful business they choose to pursue, this does not include the right to take the house of another without his consent, and against his will, in which to conduct that business. The petitioners are on the grounds of the home, not merely as citizens of the United States, but as members or inmates of the home itself, received as such by the state through its board, to be cared for and maintained because they are unable properly to care for themselves. They know the law of the state has provided a home for them in their declining days and when they seek and gain admission thereto, they impliedly agree to comply with all reasonable regulations and rules which the board may adopt for conducting the home affairs. If petitioners, as citizens, have the absolute right to sell merchandise on the home grounds and in any of its buildings or rooms which they may occupy, every other citizen member or inmate has the same right. There is no evidence in this record of arbitrary action or bad faith on the part of the board. The petitioners had a hearing and presented the ground of their objection to the orders made. The trial court did not state the ground of its decision, but it apparently was because of the alleged constitutional right asserted by the petitioners to engage in a lawful business in any building on the premises.

We think this judgment is wrong and it is hereby set aside, and the cause is remanded with instructions to the district court to vacate its judgment and to dismiss the action.

MR. JUSTICE ADAMS not participating.

### In the Matter of the Discipline of

Mr. ................., an attorney of the court, was called before the bar and thus addressed by the Acting Chief Justice: "You have, by the authority established by the Court to act under such circumstances, been found guilty of the following unprofessional conduct: Having been a duly retained attorney of one Doe in a matter against one Roe, and having begun the legal business pertaining thereto, during the progress of the controversy, because of your client's neglect to pay your fees, you transferred your professional allegiance to his adversary and accepted retainer from the latter without notice to him who first retained you.

"Such conduct evinces a lack in you of that ethical discrimination demanded in a lawyer, and it has been recommended by The Committee on grievances of the Colorado Bar Association that you be reprimanded for such conduct. Both the finding and recommendation have been approved by this Court, and for that reprimand you are now called before us. Your conduct for whatever reason was a violation of your duty to your client and of your duty as an officer of this court. It constitutes a serious injury to your profession and cannot be tolerated.

"You are therefore thus reprimanded for it and solemnly warned against a repetition thereof and advised that such will be a sufficient cause for your disbarment."

Mr. Justice Whitford concurs in this judgment but is of the opinion that the respondent's conduct requires a reference of the matter to the Attorney General with instructions to begin proceedings for more rigorous discipline.

*En Banc.*

Announced March 12th, 1928.