PATRICK MURPHY & others *vs.* HENRY R. WEBSTER & others.

Essex.   March 18; September 6. — October 21, 1881.

Under a city charter which provides that the mayor shall be the chief executive officer of the city; that the mayor shall preside in the board of aldermen, but shall have a casting vote only; that the executive power generally, and the administration of the police, shall be vested in, and may be exercised by, the mayor and aldermen; that the mayor and aldermen shall have full and exclusive power to appoint all police officers and the same to remove at pleasure; and that the mayor shall have the exclusive power of nomination, subject to confirmation or rejection by the board of aldermen; — a police officer, once nominated by the mayor and confirmed by the board of aldermen, cannot be removed by that board in the presence and without the consent of the mayor.

An ordinance of a city, which provides that the pay of police officers shall be fixed by the mayor and aldermen, will not warrant the aldermen, the mayor non-concurring, in denying to police officers, lawfully holding their offices, all pay whatever.

PETITION IN EQUITY, under the Gen. Sts. *c.* 18, § 79, by ten taxable inhabitants of the city of Lawrence, for an injunction to restrain the mayor of said city from drawing his order on the city treasurer authorizing him to pay from the funds of the city

certain sums of money to twenty-two persons claiming to be police officers, to restrain the treasurer from paying said sums, and the twenty-two persons from receiving them. The case was heard on the petition, answer, agreed facts and evidence, by *Morton,* J., who reported, for the consideration of the full court, and for the entry of such decree as might be deemed proper, the following case :

In 1881, the municipal year began on January 3. There was then on duty a police force of twenty-eight regular police officers and night watchmen, who had been duly appointed at the commencement of the preceding municipal year.

On said January 3, the mayor and aldermen duly held a meeting, at which police officers could have been legally appointed or removed. At this meeting, the mayor presiding and putting the vote, an order was introduced and acted upon, as appears by the following copy of the record : " City of Lawrence. In board of aldermen, January 3, 1881. ' Ordered, that the police force including all regular officers be and are hereby discharged. This order to take effect twelve o'clock, noon, January 4, 1881.' In receiving the order, the mayor stated that he should not present the order to be voted on to take effect, but if the board desired to arrive at an expression of opinion he would offer the order for that purpose, and desired the board to carefully consider its action, as from it might follow litigation. The order was then adopted by a yea and nay vote. Aldermen Dyer and Smith voting ' no,' and Aldermen Danforth, Doe and Saunders voting ' yea,' Alderman Dolbier not voting. The mayor then announced that the adoption of the order had no effect upon the police force, who would remain upon duty until properly removed, as I refuse to concur in your action. The creation of an officer requiring coördinate action of the mayor and aldermen and the discharge of an officer would require the same action of a coördinate authority."

At the same meeting the mayor nominated and the aldermen confirmed one hundred and three special police officers, who were called " special officers " by the mayor at the time of their nomination, and were named " special police officers " on the record. Under the ordinances of the city, the mayor had the power to order such of these officers as qualified to regular

police duty, with their consent. Between January 4 and 17, 1881, sixty-six of these special police officers were duly qualified. These officers were not appointed with any regard to their qualification for regular police officers and night watchmen; and it was not the intention of the power appointing them that they should be called into such service except temporarily in case of a legal vacancy upon the police force.

At a meeting of the mayor and aldermen held on January 17, 1881, the mayor presiding and putting the vote, the following order was adopted: " Ordered, that the pay of the police appointed by his Honor, Mayor Webster, and confirmed by the board of aldermen for the current year, or who may be hereafter during the current year so appointed and confirmed, shall be two dollars and twenty-five cents for each day's service of ten hours, performed by them when assigned to duty, and at the same rate for any extra time in which they shall be employed; and that no person, except those appointed and confirmed as above, shall be entitled to receive any pay for services rendered by them in the performance of police duty." At the time of the passage of this order, the mayor neither concurred nor non-concurred therein, deeming it a matter upon which he could not vote.

The persons whose pay is in question in this case were duly appointed regular police officers in 1880, and were serving as such on January 3, 1880. On January 4, 1881, the mayor requested these persons to continue to serve the city in the capacity of regular police officers and night watchmen, with which request they have faithfully complied down to the filing of this petition. Previously to such request the mayor had not nominated either of said persons for regular or special police officers; and, at the time of such request, he contended that they held over as police officers, and that the orders of January 3 and 17, 1881, (which were communicated to them,) so far as they aimed at the removal of said officers, or the depriving them of compensation for services as police officers, were inoperative, and void.

At the meeting of January 17, the person who was city marshal in 1880 was nominated and confirmed as city marshal for 1881, and between January 17 and the date of the filing of the

petition, the mayor has nominated and the aldermen confirmed five regular police officers, all of whom the mayor assigned to duty, and these were the only regular police officers nominated down to the filing of the petition. None of them were nominated in the place of any of the persons whose pay is in question in this case.

The mayor, at the time of the filing of this petition, had issued his order on the city treasurer to pay the officers in question the amounts claimed by each, the same being for services rendered as regular police officers and night watchmen in said city during the entire month of January 1881, and the treasurer of said city intended to pay the same at the date of filing this petition. These claims were approved by a majority of the committee on accounts, the proper committee of the city government for approving claims of this class; and the sums charged were customary and reasonable. It was admitted that they were in any event entitled to be paid for the first four days in January.

The following provisions of the city charter, St. 1853, c. 70, were relied on by the parties at the hearing :

" Sect. 2. The administration of all the fiscal, prudential and municipal affairs of the said city, with the government thereof, shall be vested in one municipal officer, to be styled the mayor; one council of six, to be called the board of aldermen; and one council of eighteen, to be called the common council; which boards, in their joint capacity, shall be denominated the city council, and the members thereof shall be sworn to the faithful performance of their respective duties."

" Sect. 7. The mayor, thus chosen and qualified, shall be the chief executive officer of the city : it shall be his duty to be vigilant in causing the laws and regulations of the city to be enforced, and to exercise a general supervision over the conduct of all subordinate officers, and to cause their neglect of duty to be punished; he may call special meetings of the board of aldermen and common council, or either of them, when necessary in his opinion, by causing notices in writing to be left at the places of residence of the several members; he shall communicate, from time to time, to both of them, such information, and recommend such measures, as, in his opinion, the interests of the city may require ; he shall preside in the board of aldermen,

and in convention of the two boards, but shall have a casting vote only."

"SECT. 8. The executive power of the said city generally, and the administration of the police, with all the power heretofore vested in the selectmen of Lawrence, shall be vested in, and may be exercised by, the mayor and aldermen, as fully as if the same were herein specially enumerated. The mayor and aldermen shall have full and exclusive power to appoint a constable and assistants, or a city marshal and assistants, with the powers and duties of constables, and all other police officers, and the same to remove at pleasure. And the mayor and aldermen may require any person, who may be appointed marshal or constable of the city, to give bonds for the faithful discharge of the duties of the office."

"SECT. 9. In all cases in which appointments are directed to be made by the mayor and aldermen, the mayor shall have the exclusive right to nomination, being subject, however, to confirmation or rejection by the board of aldermen ; and no person shall be eligible to any office of emolument, the salary of which is payable out of the city treasury, who, at the time of such appointment, shall be a member of the board of aldermen or of the common council."

The following provisions of the ordinances passed by said city in 1879 were also relied upon :

" The mode of electing all city officers for which provision is not otherwise made, either by the laws of the Commonwealth or by some other ordinance of the city, shall be as follows, to wit: they shall first be elected by the mayor and aldermen, and sent down to the common council for its concurrence, rejection or amendment. And unless by law or ordinance otherwise specially determined, all officers shall be removable at pleasure, by the authority conferring their appointment or election, and shall hold office until their successors are chosen and qualified, unless removed from office.

" The pay of the assistant marshals, captain of the night watch and members of the police force shall be fixed by the mayor and aldermen.

" No policeman shall receive any pay for service as such, unless detailed thereto by the mayor of the city, or the city

marshal; or the bill for such service is approved by the committee on police."

The case was argued at the bar in March 1881, and afterwards submitted on briefs to all the judges.

*J. C. Sanborn & C. G. Saunders,* for the petitioners.

*E. T. Burley,* for the respondents.

GRAY, C. J. By the charter of the city of Lawrence, St. 1853, *c.* 70, a municipal government is established, with complete and distinct legislative and executive departments, subordinate, of course, to the Legislature of the Commonwealth. The legislative power is vested in the city council, consisting of two branches, the board of aldermen and the common council — as the Legislature of the Commonwealth or of the nation consists of a Senate and a House of Representatives. The executive power is vested in the mayor or in the mayor and aldermen — in analogy to the constitutional provisions which confer corresponding powers upon the Governor and Council or the President and Senate.

The provision of § 7 of the charter, that the mayor "shall preside in the board of aldermen, and in convention of the two boards, but shall have a casting vote only," makes him presiding officer of the board of aldermen — as the Vice-President of the United States is President of the Senate — and, like the provision of the later statute of 1876, *c.* 193, § 2, that "in any city where the mayor acts as presiding officer of the board of aldermen, he shall have no right to vote," relates only to the exercise of the powers appertaining to him as such presiding officer, and not to the exercise of the powers inherent in him as mayor and "chief executive officer of the city."

The provisions on this subject are to be found in the subsequent sections of the charter. It is enacted in § 8, that "the executive power of the said city generally, and the administration of the police, with all the power heretofore vested in the selectmen of Lawrence, shall be vested in, and may be exercised by, the mayor and aldermen, as fully as if the same were herein specifically enumerated ; " and that " the mayor and aldermen shall have full and exclusive power to appoint all police officers, and the same to remove at pleasure ; " and in § 9, that " in all cases in which appointments are directed to be made by the

mayor and aldermen, the mayor shall have the exclusive power
of nomination, being subject however to confirmation or rejec-
tion by the board of aldermen." Similar provisions as to the
nomination, appointment and removal of officers have since been
made by general laws. Sts. 1867, c. 279; 1876, c. 80.

The power to appoint and the power to remove officers are
in their nature executive powers. Unless otherwise provided by
constitution or statute, the power of removal is incident to the
power of appointment. *Cujus est instituere, ejus est abrogare.*
Both the power of appointing and the power of removing police
officers are in the clearest terms vested by the statutes in the
mayor and aldermen, and not in the mayor alone nor in the
board of aldermen alone. The mayor is the chief executive of
the city and has the exclusive power of nomination. These
premises afford strong ground for the inference that the power
to initiate the removal of a police officer, like that of initiating
his appointment, is exclusively in the mayor. *Ex parte Hennen*,
13 Pet. 230, 259. But, however that may be, the court is of
opinion that no police officer, once nominated by the mayor
and confirmed by the board of aldermen, can be removed by
that board in the presence and without the consent of the
mayor.

The decision in *Chandler* v. *Lawrence*, 128 Mass. 213, has no
bearing upon this case. The charter of Lawrence, in the latter
part of § 8, (not quoted in the report now before us,) author-
izes all subordinate municipal officers, as to whom no provision
is made in the charter or in any other statute, to be appointed
or elected in such manner as the city council may by by-law
determine. In *Chandler* v. *Lawrence*, the officer in question was
such a subordinate officer, elected by the city council under a
by-law which provided that he might be removed at its pleasure,
and he had been removed by concurrent vote of the two branches
of the city council, to which the assent of the mayor was not
required.

The ordinances of the city do not undertake to, and could not,
take away the power, conferred upon the mayor by statute, to
participate in the removal, as well as in the appointment, of
police officers. Nor can the ordinance which provides that the
pay of police officers shall be fixed by the mayor and aldermen

warrant the aldermen, the mayor non-concurring, in denying to police officers, lawfully holding their offices, all pay whatever.

It follows that neither of the orders of the board of aldermen on which the petitioners rely is of any legal authority or effect.                                                    *Petition dismissed.*