# APRIL TERM, 1923.

KOEPER *v.* DETROIT STREET RAILWAY COMMISSION.

CONSTITUTIONAL LAW — JURISDICTION — STATUTES — SOLDIERS — COURTS.

> Plaintiff, an honorably discharged veteran of the World War, was discharged by the Detroit Railway Commission without a hearing before the circuit court as required by Act No. 224, Pub. Acts 1919, amending 1 Comp. Laws 1915, § 1041, providing for the preference of ex-soldiers for public employments, and on mandamus proceedings by plaintiff under said statute he was reinstated without the constitutionality of said act being questioned, but the circuit court refused to order payment of compensation for the time he was out, and plaintiff again brought mandamus under said statute to compel its payment. The court refused the writ on the ground that it was without jurisdiction because section 2 of said statute attempts to confer executive acts upon the courts in contravention of section 2, Art. 4, Const. of Michigan, which decision is affirmed upon certiorari per FELLOWS, CLARK, BIRD, MOORE, and STEERE, JJ.; SHARPE, J., concurring in the result, but holding that decision as to the constitutionality of the statute is not necessary; WIEST, C. J., and McDONALD, J., concurring in the result, but dissenting from the holding that the statute is unconstitutional.

Certiorari to Wayne; Hunt (Ormond F.), J. Submitted April 18, 1922. (Calendar No. 30,178.) Decided April 27, 1923.

Mandamus by Charles C. Koeper to compel the street railway commission of the city of Detroit to pay a salary. From an order denying the writ, plaintiff brings certiorari. Affirmed.

---

On validity of statute imposing upon the court the duty of performing nonjudicial function, see notes in 12 A. L. R. 57, 63.

On validity of statute giving veterans preference in office, see note in 10 L. R. A. (N. S.) 825.

*Kenneth M. Stevens* (*Frank D. Eaman,* of counsel),
for appellant.

*Clarence E. Wilcox,* Corporation Counsel, and *John R. Watkins,* Assistant Corporation Counsel, for appellee.

MOORE, J.   The facts are stipulated as follows:

"The relator was employed by a properly authorized agent of the street railway commission of the city of Detroit on November 10, 1920, as a lineman, and that on the 26th day of November, 1920, he was discharged from this employment by said commission. That the relator was at that time, and now is, an honorably discharged veteran of the European war, having served in the navy of the United States of America; is a resident of the city of Detroit, Wayne county, Michigan, and had been at the time of his employment a resident of said city for upwards of two years.

"That the relator started suit in the Wayne circuit court against the respondent under section 1041 of the Compiled Laws of 1915 of the State of Michigan, as amended by Act No. 224 of the Public Acts of 1919 of the State of Michigan (Comp. Laws, Supp. 1922, § 1041), praying for a writ of mandamus to compel his reinstatement and the payment of money due him for the period from November 26, 1920, until the time of the filing of his petition for said writ. That the said cause came on for hearing, and as a result thereof a writ of mandamus ordering the reinstatement of the relator was issued out of and under the seal of the court on the 6th day of April, A. D. 1921, but the trial court refused in that proceeding to adjudicate the matter of any moneys due the relator. That in said proceeding the constitutionality of the legislation under which the writ of mandamus was sought was not at issue, and no reference to the constitutionality of the act was made by either party, nor by the trial court. The relator was at once returned to his work.

"In July of the year 1921, this proceeding was instituted asking for a writ of mandamus compelling the street railway commission of the city of Detroit to

pay the relator the sum of $838.65 which he claimed as the sum due him for services which he did not perform, but which he claims he should have been allowed to perform, between the period of November 26, 1920, and April 6, 1921, that period between the time of his discharge and his reinstatement by the Wayne circuit court by the writ of mandamus. That prior to the bringing of this action the plaintiff filed with the common council of the city of Detroit, Michigan, his petition for an order directing the payment of said sum of $838.65. This proceeding is also brought under the provisions of section 1041 of the Compiled Laws of 1915 of the State of Michigan, as amended by Act No. 224 of the Public Acts of 1919 of the State of Michigan."

The proceeding calls for a construction of Act No. 205, Pub. Acts 1897, as amended by Act No. 85, Pub. Acts 1899, Act No. 329, Pub. Acts 1907, and by Act No. 224, Pub. Acts 1919 (Comp. Laws Supp. 1922, §§ 1041, 1042).

The last named act reads in part as follows:

"SECTION 1. In every public department and upon the public works of the State and of every county and municipal corporation thereof honorably discharged Union soldiers, sailors and marines of the civil war, and honorably discharged soldiers, sailors and marines of the Spanish-American war, of the present war in Europe and of every other war in which the United States of America has been a participant, shall be preferred for appointment and employment; age, loss of limb or other physical impairment which does not, in fact, incapacitate, shall not be deemed to disqualify them: *Provided, however*, that the applicant shall be of good moral character and shall have been a resident of the State for at least two years and of the county in which the office or position is located for at least one year, and possesses other requisite qualifications.

"SEC. 2. No veteran or other soldier, sailor or marine as indicated in the preceding section holding an office or employment in any public department or public works of the State, or of any county, city, town-

ship or village of the State shall be removed or suspended or shall, without his consent, be transferred from such office or employment except after a full hearing before the circuit court of the county where he is employed, and at such hearing the veteran shall have the right to be present and to be represented by counsel. Such removal, suspension, or transfer shall be made only upon a written order of the circuit court."

The trial court filed a very elaborate opinion from which we quote freely:

"The court at the time stated to counsel and reiterates here, that unless the court has jurisdiction it ought not to make any order in the matter at all in any of the cases then pending before it.

"The Constitution of the State of Michigan, article 4, declares:

"'SECTION 1. The powers of government are divided into three departments:  The legislative, executive and judicial.

"'SEC. 2. No person belonging to one department shall exercise the powers belonging to another, except in the cases expressly provided in this Constitution.'

"In general it may be said that in construing the above provisions, the Supreme Court of the State of Michigan has given effect to the above provisions in a large number of cases, a few of which only are cited here, as showing the temper and tendency thereof (citing *Houseman* v. *Kent Circuit Judge*, 58 Mich. 364; *City of Manistee* v. *Harley*, 79 Mich. 238; *People* v. *Dickerson*, 164 Mich. 148 [33 L. R. A. (N. S.) 917, Ann. Cas. 1917B, 688]; *Anway* v. *Railway Co.*, 211 Mich. 592 [12 A. L. R. 26], and other authorities).

"The Constitution of Michigan, among other things, contains the following, article 9:

"'SECTION 7. The governor shall have the power and it shall be his duty, except at such time as the legislature may be in session, to examine into the condition and administration of any public office and the acts of any public officer, elective or appointive; to remove from office for gross neglect of duty or for corrupt conduct in office, or any other misfeasance or malfeasance therein, any elective or appointive State officer, except

legislative or judicial, and report the causes of such removal to the legislature at its next session.

" 'SEC. 8. Any officer elected by a county, city, village, township or school district may be removed from office in such manner and for such cause as shall be prescribed by law.'

"Constitution of 1850, article 12, among other things, contains the following:

" 'SECTION 7. The legislature shall provide by law for the removal of any officer elected by a county, township or school district, in such manner and for such cause as to them shall seem just and proper.

" 'SEC. 8. The governor shall have power and it shall be his duty, except at such time as the legislature may be in session, to examine into the condition and administration of any public office and the acts of any public officer, elective or appointed, to remove from office for gross neglect of duty or for corrupt conduct in office, or any other misfeasance or malfeasance therein, either of the following State officers, to-wit: The attorney general, State treasurer, commissioner of the land office, secretary of State, auditor general, superintendent of public instruction or members of the State board of education, or any other officers of the State except legislative or judicial, elective or appointed, and to appoint a successor for the remainder of their respective unexpired term of office, and report the causes of such removal to the legislature at its next session.'

"In pursuance of the above section 7 the legislature delegated to the governor of the State the power of removal.    See 1 Comp. Laws 1915, § 243, wherein certain officers of the State and county may be removed by the governor for 'Official misconduct, or habitual or wilful neglect of duty.'

"Section 245, 1 Comp. Laws 1915, among other things provides:

" 'The governor may remove all county officers chosen by the electors of any county or appointed by him; and shall also remove all justices of the peace and township officers chosen by the electors of any township; or city or village officers chosen by the electors of any city or village, or any ward or voting district thereof, when he shall be satisfied from sufficient evidence submitted to him as hereinafter provided, that such officer is incompetent to execute properly the duties of his office, or has been guilty of official misconduct, or wilful neglect

of duty, or of extortion, or habitual drunkenness, or has been convicted of being drunk or whenever it shall appear by a certified copy of the judgment of a court of record of this State that such officer after his election or appointment shall have been convicted of a felony;' etc.

"It will be noted at the outset that no authority is delegated to the governor, either in the Constitution or in the statutes passed thereafter in pursuance thereof, except for causes therein specifically designated. In no case is the power of removal lodged in the removing officer under the designation of 'for cause' or 'cause shown or proven,' but in each case the specific kind of cause is pointed out in the statute, among other things, to-wit: official misconduct, habitual or wilful neglect of duty, extortion, habitual drunkenness, convicted of being drunk, convicted of a felony, etc.

"It may be observed that the above provisions relate to  officer as distinguished from employees; however, Act No. 156, Laws 1851, has the following title:

"'An act to define the powers and duties of the boards of supervisors of the several counties, and to confer upon them certain local, administrative and legislative powers.'

"Section 11 of said act, subdivision 17th as amended (1 Comp. Laws 1915, § 2274), among other things provides:

"'That the board of supervisors shall have authority to remove any officer or agent heretofore or hereafter to be appointed by said board when in its opinion he is incompetent to execute properly the duties of his office, or when on charges and evidence it shall be satisfied that he has been guilty of official misconduct, or habitual or wilful neglect of duty, if in its opinion such misconduct or neglect shall be a sufficient cause for such removal; but no such officer or agent shall be removed for such misconduct or neglect, unless charges thereof shall have been preferred to said board of supervisors or the chairman thereof, and notice of the hearing, with a copy of the charges, delivered to such officer or agent, and a full opportunity given him to be heard in his defense, either in person or by counsel.'

"The above provisions of the statute were extensively considered in the case of *Trainor* v. *Board of*

*Auditors,* 89 Mich. 162 (15 L. R. A. 95).    In this
case it appeared that relator Trainor was appointed
file clerk of county records, and relator George C.
Burgess chief janitor of the county building by the
board of auditors, and on April 13, 1891, a contract in
writing was signed by the county auditors hiring and
employing said Trainor and Burgess for the term
ending January 1, 1892.    It further appeared that
thereafter the political complexion of the board of
auditors changed, and on April 27, 1891, the board of
auditors, as then constituted, passed a resolution find-
ing that Trainor and Burgess were incompetent to
properly execute the duties of their offices, and further
resolved that their services be dispensed with from
and after the 1st day of May, 1891.    The relators
thereupon filed proceedings in court, and it was shown
that the action discharging them was without notice
and without an opportunity to be heard.    It was
shown upon the trial that the board of auditors had
the same power of removal as boards of supervisors
possessed under the statutes, and the question arose
as to whether the action of the board of auditors in
discharging and removing the employees in the manner
they did was legal.    At page 170, Mr. Justice MORSE,
who delivered the opinion of the court, among other
things, said:

"'Although it is the undoubted policy of our State, and best
in accord with our system of government, that officers should
hold for fixed terms, and not be subject to removal at the will
or caprice of the appointing power, yet there is no constitutional
objection to the conferring of such power of removal in offices
not elective, and the legislature has undoubted authority to do
so.'

"At page 171 the opinion proceeds as follows:

"'Nor is it at all singular that the legislature made a dis-
tinction in the method of procedure between removals for in-
competency and removals for official misconduct and wilful
neglect of duty.    One charge is hard to specify and to estab-
lish, while the others are not.    Official misconduct and wilful
neglect of duty would appear about the same to all, while
incompetency would involve at once a difference of opinion, as
it would be generally a mere matter of opinion.    If a removal,

in cases of janitors and the like employees in and about public offices, for incompetency, is to be made, it would seem wiser to leave it to the judgment or opinion of the appointing officer, rather than, every time a hall sweeper or a door closer is to be removed from public office for failure to do his work properly, to require that charges should be preferred and a hearing had upon them. The relators in this case may have a remedy if they have been removed solely for political reasons, and unjustly branded as incompetent when they are not; but it is not by this proceeding as they cannot here traverse the statement that in the opinion of the board they were incompetent. It is the opinion that controls, and we must be bound by the return of the respondent that this opinion was the cause of the removal.'

"It may be observed in passing that the Supreme Court held that the boards of supervisors and, in the county of Wayne, the board of county auditors, an administrative and executive body in each case, could be delegated with the power of removal, no claim being made that the determination of the cases mentioned in the statute was a judicial function.

"*Fuller* v. *Attorney General,* 98 Mich. 96. In this case it appeared that the board of control of the house of correction removed the warden of the reformatory at Ionia, and thereafter the relator, the party removed, applied to the attorney general to file an information in the nature of a *quo warranto* to test the title of the incumbent to the office, and in delivering the opinion of the court, Chief Justice HOOKER, at page 101, among other things, says:

" 'The constitutionality of the act giving power of removal to the board of control is also attacked under section 2, art. 3, of the Constitution, which reads as follows:

" ' "No person belonging to one department shall exercise the powers properly belonging to another, except in the cases expressly provided in this Constitution."

" 'This is upon the theory that the right to an office, where removal is sought for cause, can only be tried by some officer belonging to the judicial department under the Constitution.'

"The court then reviews at length some of the former decisions of the Supreme Court, and continues at the bottom of page 102 as follows:

" 'There never has been a time in the history of the State when the courts have attempted to exercise this power of removal.'

"Again the court continues near the bottom of page 103:

" 'The State has existed nearly 60 years, during all of which time officers and boards have been created, with power of appointing and removing subordinates—sometimes at will or pleasure, sometimes with concurrence of others, sometimes for cause,—before it was discovered that the constitutional provision that no person belonging to one branch of the government shall perform the functions of either of the others was a limitation of the power of the legislature in these matters. Meantime, this court has repeatedly refused to interfere with removals of subordinates, and it is not too much to say that the three departments of government have concurred in the recognition of the power and it is as plain that none of them ever supposed that the power of removal was limited to a department that had never been suspected of having any jurisdiction of such matters (citing cases).

" 'To the proposition that removing boards perform acts which are judicial in their nature, we readily assent. They must hear and determine, when the power is limited to removals for cause. So must boards of review, auditing boards, highway and drain officers, pardon boards, and in fact nearly every officer who has duties to perform; and it is also true that the action of all of these is subject to review in courts of justice. None of them, however, belong to the judicial department of government, nor can they be called judicial officers, though all perform acts in their nature judicial. Their acts are administrative.'

"The opinion continues at page 105 as follows:

" 'It is legitimate and proper for the legislature to guard against hasty or partisan action by boards, by requiring the publicity which comes of written charges and a hearing; and where this is required, though the action may be said to be, in a sense, judicial it is not in the sense contended for, and the turpitude of the act constituting cause cannot embarrass the government by depriving the board of power to remove, on the ground that the officer has a right to a trial by the judicial department. We think the cases of *Dullam* v. *Willson* (53 Mich.

392 [51 Am. Rep. 128]) and *Clay* v. *Stuart* (74 Mich. 415 [16 Am. St. Rep. 644]), as well as the other cases in Michigan, are, not at variance with this doctrine, though the language used in some of them might, at first blush, lead us to think otherwise. The case of *Wellman* v. *Board of Police*, 84 Mich. 558, 91 Mich. 427, is one where this court asserted the power of the board, although the offense was a felony.   The question was there raised and settled in accord with what has been said.   See, also, *Stadler* v. *City of Detroit*, 13 Mich. 346; *Board of Auditors* v. *Benoit*, 20 Mich. 185 (4 Am. Rep. 382).

" 'The next question requiring attention pertains to the charge upon which the action of the board was based.    The act provides that the warden shall only be removed for cause.   What is meant by cause?   If we look to the Constitution for light upon this subject, we shall find that causes for impeachment are limited to corrupt conduct in office, crimes and misdemeanors. Const. art. 12, § 1.   Removals by the governor under section 8, art. 12, may be for gross neglect of duty, corrupt conduct in office, or any other misfeasance or malfeasance therein. We can mention many other things which would justify a State officer or board in removing a subordinate.   Negligence, bad habits, slovenliness, want of discretion, incompetency, or anything else which would show unfitness for the place, and inability to perform the duties in a satisfactory manner and in accordance with the best interests of the State, would justify his removal.'

"And again the court continues at page 107 as follows:

" 'A radical difference exists between removals of State officers for the causes mentioned, and the removal of subordinates by their superiors; and while, in this case, the law requires the charges to be presented in writing, it is sufficient if they contain specific statements of infractions of the law, or of the rules and regulations which the accused should observe, and specify the facts depended upon to show incompetency or unfitness, and which require a removal, from the standpoint of the best interests of the institution.'

"We have quoted at some length from the above case because we have found more light upon the various propositions involved in the instant case than any other decision of the Supreme Court.

"*Attorney General* v. *Jochim*, 99 Mich. 358 (23

L. R. A. 699, 41 Am. St. Rep. 606). This was an information in the nature of *quo warranto* to test the title of respondent to the office of secretary of State. In this case the power of the governor to remove, as well as the sufficiency of the cause alleged, was involved. Among other things, it was claimed that a public office was property of which a constitutional officer could not be deprived without due process of law, which involved a judicial proceeding for the trial, and in discussing this question, among other things the court uses the following language at pp. 368 and 369:

" 'The legislature may remove officers not only by abolishing the office, but by an act declaring it vacant, as was done by Act No. 140, § 13, Pub. Acts 1891. *Throop* v. *Langdon*, 40 Mich. 673; *Board of Auditors* v. *Benoit*, 20 Mich. 184 (4 Am. Rep. 382). And it may lodge the power to remove from statutory offices in boards or other officers, subject to statutory regulations. * * *

" 'Nor does it follow that removal from office is a deprivation of the officer of property, because it must be for cause, upon specific charges, and after an opportunity to be heard. * * *

" 'Due process is not necessarily judicial process. Administrative process, which has been regarded as necessary in government, and sanctioned by long usage, is as much due process as any other. * * *

" 'The requirement of the Constitution that a person cannot be deprived of his property without due process of law does not imply that all trials in the State courts, affecting property, must be by jury.'

"At page 374, the court continues:

" '*Dullam* v. *Willson*, 53 Mich. 392 (51 Am. Rep. 128), is authority for the proposition that the incumbent is entitled to notice of the charge, and an opportunity to be heard in his defense. This necessarily implies that the governor's action is, in a sense, judicial. But it does not follow that the investigation must be made by some other person or officer, who must make complaint to the governor; that the complainant must procure counsel; or that the governor is necessarily interested, and thereby disqualified from hearing and determining, because he performs the other duties which are specifically imposed upon him by this section of the Constitution. * * *

Finally, the governor acts judicially upon the accumulated evidence, and such explanations by way of defense as the respondent may offer.   In this respect his action is similar to that discussed in *Fuller* v. *Attorney General*, 98 Mich. 96, which discussion it is unnecessary to repeat.'

"Article 7, § 11, of the Constitution of Michigan provides:

" 'The judges of the circuit courts may fill any vacancy in the offices of county clerk or prosecuting attorney within their respective jurisdictions, but shall not exercise any other power of appointment to public office.'

"In pursuance of the above constitutional provision the legislature passed an act (See 1 Comp. Laws 1915, § 255), which among other things provides:

· " 'When at any time there shall be in either of the offices of county clerk or prosecuting attorney, no officer duly authorized to execute the duties thereof, the judge of the circuit court of the circuit in which the county where such vacancy exists shall be situated, may appoint some suitable person to perform the duties of either of said officers for the time being.' * * *

"It is manifest that the power of the circuit judges above conferred to fill vacancies in the offices of the county clerk and prosecuting attorney, is of and by itself an executive or administrative act.   It is to be noted, however, that the constitutional provisions separate the powers of government into three departments and forbids any person belonging to one department to exercise the powers belonging to another 'except in the cases expressly provided in this Constitution.'

"The clause above quoted seems to complete the answer to the objection that might be made; however, another view of the matter is, that the offices of prosecuting attorney and county clerk are incidental to the exercise of the complete jurisdiction of the circuit court, and as bearing upon this phase, citation is hereby had to the cause of *Union Trust Co.* v. *Wayne Probate Judge*, 125 Mich. 487.

"In this case Act No. 188, Pub. Acts 1899, among other things, provided for the fixing of the tax on in-

heritances and delegated to the probate judge certain duties.

"Upon page 494, Mr. Justice HOOKER, in delivering the opinion of the court, says:

" 'We are of the opinion that there is no force in the point that duties not judicial are imposed upon the judge of probate. These duties, as held in the cases of *State* v. *Gloucester Circuit Judge*, 50 N. J. Law, 585, 611 (15 Atl. 272, 1 L. R. A. 86), and *In re McPherson*, 104 N. Y. 306 (10 N. E. 685, 58 Am. Rep. 502), are necessarily incident to the settlement of estates, and may be performed by the judge of probate.'

"*McCall* v. *Calhoun Circuit Judge*, 146 Mich. 319. In this case Act No. 272, Pub. Acts 1905, was challenged upon the ground that it attempted to delegate to the circuit judge certain administrative functions not strictly judicial. This act, among other things, provided for inspection and approval by the circuit judge of the place for holding court, and the Supreme Court held that while not strictly judicial, these acts were incidental to judicial functions and sustained the act.

"In the charter and laws of Detroit, 1914-1916, § 286, which is the act creating the recorder's court, appear the following provisions:

" 'There shall be a clerk and two deputy clerks of said court, who shall be appointed by the recorder, and a memorandum of such appointment shall be entered upon the records of the court. Such clerk and deputy clerks shall hold their offices for the term of six years from and after January 16, 1894, and until their successors are duly appointed and qualified. * * * The recorder shall have the power at any time to remove such clerk, deputy clerk and assistants, for incompetence or serious neglect in the performance of their duties; and in case of such removal, or of a vacancy in the said office by the death of said clerk, deputy clerk or assistants or otherwise, the said recorder shall fill the unexpired term by a new appointment.'

"Act No. 369, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 14725 [1] *et seq.*), reorganized the recorder's court of the city of Detroit.

"In the case of *Beck* v. *Keidan*, 215 Mich. 13, one Benjamin E. Beck was appointed deputy clerk by the recorder on January 29, 1920, and that thereafter said

Beck was verbally notified that a majority of the judges of the said recorder's court had decided to dispense with his services from and after July 31, 1920. In his bill praying for injunction Beck averred that no charges were presented, filed or served, nor had he had the advantage of any trial, nor was any order of removal ever entered in the journal of the recorder's court, and thereupon he applied to the circuit court for an injunction restraining the clerk of the recorder's court and the several judges thereof from his threatened ouster.

"It will be noted that the power of removal under the statute above quoted was limited to the following specifications: (a) For incompetence. (b) Serious neglect in the performance of duty.

"The circuit dismissed the bill upon the ground of want of jurisdiction, but the Supreme Court reversed the decree and granted injunctive relief.

"The opinion (see page 19) contains the following significant observation:

"'Now that the court is reorganized we think a majority of the judges may do what Judge Wilkins theretofore might do. If they should find, after a proper hearing, after notice and an opportunity to be heard has been given him, that the plaintiff is incompetent or that he seriously neglects the performance of his duties, then we have no doubt of the power of removal. That power has not been properly exercised in the instant case.'

"It is manifest that competent clerks, and those who do not neglect the performance of their duties, is not only incidental to the functioning of courts, but is absolutely essential to the proper administration of justice, and by reason thereof the courts may be delegated with such power.

"Act No. 205, Pub. Acts 1897, in its original form prior to the Brennan amendment, came before the Supreme Court for construction in the case of *Ellis* v. *Common Council of Grand Rapids,* 123 Mich. 567, and at page 569, Mr. Justice GRANT, who delivered the opinion of the court, among other things, says:

"'The provisions of this act are penal in their character, and must be strictly construed,'

"Keeping in mind the decision of the Supreme Court above quoted, attention must be directed to the failure of section 2 to specify, either directly or remotely, the causes upon which suspension, removal or transfer shall be made.

"In *Robison* v. *Miner*, 68 Mich. 549, the validity of the liquor law of 1887 was challenged upon several grounds. This law, among other things authorized municipal boards or trustees, or council who passed upon the sufficiency of the bond of the applicant, to reject the same if the bond is known to them 'to be a person whose character and habits would render him or her an unfit person to conduct the business of selling liquor.'

"Mr. Justice CAMPBELL, who delivered the opinion of the court upon this proposition, among other things, says, at page 555:

" 'If no standard is laid down, there may be as many scales of fitness and unfitness as there are boards.'

"At page 556, the learned justice continues:

" 'If the statute had fixed the rule, there would be means of protecting parties against caprice and condemnation unheard. But when the same persons are to be judges of the proper causes of rejection, as well as of the fitness of persons under such causes, the law subjects every one to the mere will of his neighbors, and gives him no rights whatever. No man's rights can be submitted, under a constitutional government, to the discretion of anybody. * * *

" 'The power in a county treasurer to require new bonds in any contingency which he determines should require it is still worse, for it works a forfeiture of the rights obtained by paying the taxes imposed for the year's business, as well as the breaking up of the business. This cannot be done. The specified causes, so far as they go, are not illegally laid down, although the law is deficient in providing no method of getting at the facts by a hearing before any one. The treasurer is given such powers by this legislation as cannot be sustained on any legal principle. * * *

" 'These principles underlie the whole policy of the statute. It provides that no one shall sell, except on the condition specified, and it leaves it discretionary with local boards to de-

prive any person of the right of selling on their private judgment as to his fitness.'

"In the early case of *Underwood* v. *People*, 32 Mich. 1 (20 Am. Rep. 633), the statute of the State was declared unconstitutional, and in the course of the opinion Mr. Justice CAMPBELL refers to the case of *People, ex rel. Attorney General*, v. *Lawton*, 30 Mich. 386, which held that a law was not enforceable unless it furnished adequate means to secure the purposes for which it was enacted.    At page 5 of the opinion the justice continues:

" 'No circuit judge can be compelled to perform functions not judicial in that capacity.'

"Applying the above principles to the facts in the instant case, we find that the only offense committed by the respondent relates to the alleged excessive use of intoxicating liquors.    No allegation appears in the petition that the alleged action of respondent was contrary to the statute or contrary to the rules of the department.    Without any allegation relating thereto, rule No. 4 was received in evidence, but the rule itself contains the clause 'while on duty or in uniform,' and respondent was in neither of these conditions at the time of the alleged offense.

"The court has made extensive research into, not only the cases cited by counsel during the arguments, but also into the decisions of other States to find, if possible, whether or not any attempt has been made in other jurisdictions to delegate to the court the power of suspension, removal or transfer of executive officers or employees, and no such statute has been yet discovered."

We will not quote from the opinion any further.    It concludes:

"The court finds and determines that the removal, suspension and transfer of officers and employees in public departments of the State, and of cities, towns and villages thereof, is primarily and essentially an executive or administrative function, and the attempted delegation of such function by said section 2 to the judicial department of government is uncon-

stitutional, null and void, the same being contrary to the provisions of sections 1 and 2 of article 4 of the Constitution which are as follows:

"'SECTION 1. The powers of government are divided into three departments; The legislative, executive and judicial.

"'SEC. 2. No person belonging to one department shall exercise the powers belonging to another, except in the cases expressly provided in this Constitution.'

"Said section 2 is unconstitutional, null and void in that no provision is made in said section or in the act itself specifically setting forth the causes based upon which the order of such removal, suspension and transfer may be made. There being no common standard for determination mentioned in the statute, no judicial question arising under the statute is presented to the court.

"The effect of this decision adjudging and determining the invalidity of the amendment of section 2 as amended in 1919, revives and brings into full force said section 2 prior to said amendment, which purported to delegate to the executive department of government the function of removal, suspension and transfer. It is the opinion of this court that such delegation of power is not only legal in itself, but is the only department properly intrusted with such administrative powers, and the officers mentioned in section 2 as originally enacted may proceed to exercise the powers delegated in the same manner as though the amendment had never been passed.    *    *    *

"For the reasons above given an order may be entered dismissing the petition upon the ground that this court is without jurisdiction in the premises.

"There are four other cases now pending before this court likewise involving the validity of said section 2 as amended, and without filing a separate opinion in each case, an order of dismissal for want of jurisdiction will be entered therein respectively."

The case is brought into this court by certiorari. The important question is, Did the court err in finding that section 2 of Act No. 224, Pub. Acts 1919, is un-

constitutional?   We quote from the brief of counsel for appellant:

"In considering this contention, it may be well to have in mind at the very outset that any proceeding involving the removal of an office holder or employee, whether elected or appointed, unless such office holder be removable by law at the will of a superior is a 'judicial' rather than 'executive' or a 'legislative' act.

"It is claimed that the act in question contravenes section 2 of article 4 of the present Constitution of the State of Michigan as follows:

"'No person belonging to one department shall exercise the powers belonging to another, except in the cases expressly provided in this Constitution.'

"That the removal of an elective or appointive officer, where the statute does not expressly give the power of removal at will and without cause shown, is a 'judicial' rather than an 'executive' function will be recognized upon an examination of the following cases: *Clay* v. *Stuart,* 74 Mich. 411 (16 Am. St. Rep. 644) ; *Speed* v. *Detroit Common Council,* 98 Mich. 360 (22 L. R. A. 842, 39 Am. St. Rep. 555) ; *Metevier* v. *Therrien,* 80 Mich. 187; *Dullam* v. *Willson,* 53 Mich. 392 (51 Am. Rep. 128)."

Counsel also cite other authorities but we think none of them is controlling of the instant case, as a reading of the opinions therein will show they are readily distinguishable from the case before us.

If a court is to pass intelligently upon the question of whether one holding an office or employment in any public department shall be removed, suspended or transferred it would seem that the first inquiry would be, Is the officer or employee competent to hold the place?   Has he made himself familiar with the duties imposed upon him?   If so, does he properly discharge them?   Is he diligent about his work, or is he a loiterer?   Is he painstaking and accurate in what he does or must his work be constantly supervised be-

fore it can be acted upon?   Is he a person of integrity, whose honesty is not questioned?   All these and many other inquiries which readily suggest themselves present questions of fact and are administrative in their character and are not judicial.

The action of the court below is affirmed.

FELLOWS, CLARK, BIRD, and STEERE, JJ., concurred with MOORE, J.

WIEST, J. (*concurring*).   I am for affirmance, but not for the reason stated by Mr. Justice MOORE.   In a previous proceeding, by mandamus, plaintiff was reinstated in his former employment, and this proceeding relates solely to his right to an order directing defendant to pay him compensation during the period of his removal.   If the order for his reinstatement had directed that he be paid for the time he was out under removal, it would have been good, but the court refused to make such an adjudication.   If entitled to such pay he has an adequate remedy at law, and there is no occasion for this proceeding.   For this reason I am for affirmance, without prejudice.

I am not content with the holding that the statute in question imposes executive duties upon the court.   It is clear that, under the statute, and by necessary implication of law, there can be no removal without cause, specification thereof and opportunity to be heard.   The veteran act, so-called, is in the nature of civil service legislation and its purpose should be upheld unless violative of constitutional limitations. The dividing line between executive acts, wholly administrative in scope and character, and acts of a *quasi*-judicial nature, is well marked.   If the removal must be preceded by charges and a hearing and cause found to exist, then the act is not within the field of mere administrative functions but is *quasi*-judicial and subject to review and reversal in court under a

multitude of decisions and, by the same process of reasoning, the existence of cause may, by statute, be sent to a court for determination in the first instance.

The power of summary dismissal is prevented by this statute, but the statute does not prevent dismissal for cause, it only leaves the cause to be determined by the court upon charges made. This does not vest the court with mere executive power; it only remits to the decision of the court the alleged cause for dismissal. The question of removal is impressed with a public interest, recognized as such by express law upon the subject, and for this reason does not fall within the case of *Anway* v. *Railway Co.*, 211 Mich. 592 (12 A. L. R. 26).

There is no distinction between having a court decide such a question in the first instance or permitting a decision on a review; in both instances a justiciable question is recognized. Appointees and employees coming within the provisions of this statute have a right to remain in office or public employment until removed in the course prescribed by law. It is true that the particular employment of plaintiff was not in an office created by any statute, but he was employed within the protection of the statute. The purpose of the statute is to protect appointees and employees in minor positions.

In *Christey* v. *Cochrane*, 211 N. Y. 333 (105 N. E. 419), it was said:

"Numerous cases involving the rights of veterans to be retained in office have been presented to the courts of this State for determination. In a number of opinions reference has been made to the beneficent purposes of the laws enacted for the protection of veterans, and the reported cases indicate the care exercised by the courts in the preservation of the rights of veterans under the statute. Nearly twenty years ago this court construed the veteran act, and Judge Andrews, writing, said:

" 'It was intended to create a privileged class entitled to preferential employment in subordinate positions in the public service, the foundation of the preference being meritorious service as soldiers and sailors in the war. * * * The preference is given not only in clerical and other subordinate positions, but to every person seeking employment as a laborer on the canals or on the streets of a city, or in any capacity, however humble.' *People, ex rel. Fonda,* v. *Morton,* 148 N. Y. 156, 162, 163 (42 N. E. 538)."

See, also, *People, ex rel. Jacobus,* v. *Van Wyck,* 157 N. Y. 495, 503 (52 N. E. 559).

In *Driscoll* v. *Mayor of Somerville,* 213 Mass. 493, 494 (100 N. E. 640), the proceeding was by mandamus to compel the mayor to reinstate petitioner to the position of patrol driver in the police department of the city. It was there urged that the statute was unconstitutional: "because in contravention of that portion of article 30 of the declaration of rights which prohibits the judiciary department of government from exercising executive powers." The court held:

"It is argued that because it has been said that the 'power to appoint and the power to remove officers are in their nature executive powers' (*Murphy* v. *Webster,* 131 Mass. 482, 488), it follows that no step in the removal of one from office can be vested by law in the courts. But such a conclusion is not sound. The civil service law has for one of its objects the establishment of a tenure for certain public officers and employees, which shall be secure from arbitrary removal by executive power. One means of accomplishing this end is to require executive officers to make certain removals only after preparing a specification of charges as grounds for removal and giving to the office holder or employee a public hearing upon those charges. Such a hearing, although held before an executive officer whose main functions are executive, is 'in the nature of a judicial investigation.' *McCarthy* v. *Emerson,* 202 Mass. 352, 354 (88 N. E. 668). It requires no argument to demonstrate that the question whether certain charges of misconduct or inefficiency have been substantiated by evidence is judicial in its

essence. The same is true of the question whether a removal has been made without proper cause or in bad faith. A statute which requires a court to review the decision of questions like this, upon petition after notice to all parties and a hearing, according to judicial procedure, does not impose the performance of executive duties. It requires neither the removal nor the appointment of executive officers by the judicial department of government. It simply provides for a review of the decision of a question which is in its character judicial, by a court of law."

In *Stiles* v. *Municipal Council of Lowell*, 233 Mass. 174, 181 (123 N. E. 615, 4 A. L. R. 1365), it was said:

"The power to remove an officer in the public service is in its nature executive. when considered by itself alone. *Murphy* v. *Webster*, 131 Mass. 482. When, as essential prerequisites to the exercise of that power. there must be a formulation of specific charges as grounds for removal, notice of those charges to the person to be removed, opportunity to him for a hearing, followed by a hearing and decision, then the hearing and decision partake also of the 'nature of a judicial investigation.' *McCarthy* v. *Emerson*, 202 Mass. 352, 354 (88 N. E. 668) ; *Driscoll* v. *Mayor of Somerville*, 213 Mass. 493, 494 (100 N. E. 640) ; *Swan* v. *Justices of the Superior Court*, 222 Mass. 542, 548 (111 N. E. 386) ; *State* v. *Common Council of Superior*, 90 Wis. 612, 619 (64 N. W. 304)."

"Civil service and veteran laws are to be applied according to their terms and spirit. Often they cover subordinate positions only. As a rule they have no application to elective officers, and do not always apply to those who have definite terms. * * * Dismissals may be made only for good, sufficient or just cause, and generally written charges, with an opportunity of an explanation or hearing is required." 7 McQuillin Municipal Corporations (Supp.), § 557.

"The proceedings of removal are generally regarded as judicial or *quasi*-judicial in character, although frequently viewed as summary in nature and design to accomplish an administrative purpose, and hence

a full compliance with the rules governing trials in court is not required. They are considered judicial when they embrace, (1) specific written charges, (2) a hearing, (3) sworn testimony usually reduced to writing, and (4) a determination or judgment as to the sufficiency of the evidence to warrant removal.

" 'When by statute or by implication of law the power of removal can only be exercised for cause or after a hearing the proceeding although an exercise of an administrative power is judicial in its nature.' *People, ex rel. Hayes,* v. *Waldo,* 212 N. Y. 156, 170 (105 N. E. 961).

"A mere removal is not essentially judicial or *quasi*-judicial, but rather an executive or administrative function, especially when the power may be exercised with or without inquiry at the pleasure or caprice, or for any reason or cause as may seem to the removing authority proper. But in removal for cause only, embracing notice, right to defend, to subpœna, and compel the attendance of witnesses, administer oaths, hear evidence, and decide on the right of a citizen to hold office, it is clear that such proceedings assume a judicial character, because such is in substance a court procedure, the hearing is on the merits. It is a recognition that the accused cannot be deprived of the right to hold the office or position except for good cause established by satisfactory evidence at a hearing on the merits, which results in a decision of the right of the accused to hold or not to hold the office or position involved. It appears, therefore, that the proceeding, both in form and result, is at least *quasi*-judicial." 7 McQuillin Municipal Corporations (Supp.), § 563.

In *Thurber* v. *Duckworth,* 165 Iowa, 685 (147 N. W. 158), the veteran act was attacked on the ground that it was a violation of the constitution of Iowa, in that it granted privileges and immunities to honorably discharged soldiers that are not on the same terms equally available to other citizens. The validity of the act was upheld, citing *Shaw* v. *Marshalltown,* 131 Iowa, 128 (104 N. W. 1121, 10 L. R. A. [N. S.] 825, 9 Ann. Cas. 1039) ; *Jones* v. *Sargent,* 145 Iowa, 298

(124 N. W. 339, 27 L. R. A. [N. S.] 719, 139 Am. St. Rep. 439).

Statutes relative to appointment and employment of veterans appeared in some States shortly after the Civil War and have always been accorded tender consideration by the courts.

I find nothing in this statute violative of the Constitution or the genius of our system of government, and I am for reversal of the holding of the learned circuit judge that it imposes executive duties upon the court.

McDonald, J., concurred with Wiest, C. J.

Sharpe, J. (*concurring*). The order reinstating petitioner decided that he had been wrongfully discharged. He was, therefore, entitled to recover compensation for the period during which he was not permitted to work, less such sums as he earned, or had opportunity to earn, during such time. Such recovery might be had in an action at law. This court has many times held that mandamus will not lie when there is another adequate remedy. *Hartz* v. *Wayne Circuit Judge*, 164 Mich. 231. The defendant so averred in its answer to the petition, and its counsel urge it in their brief. The constitutionality of this act should not be determined unless necessary to a proper disposition of the case. For the reason stated, I concur in affirming the order dismissing the petition.