State ex rel. Starkweather vs. Common Council of the City of Superior.

THE STATE EX REL. STARKWEATHER VS. THE COMMON COUN-
CIL OF THE CITY OF SUPERIOR.

*September 3 — September 26, 1895.*

*Municipal corporations: Removal of mayor by common council: Constitutional law: Practice.*

1. The mayor of Superior is an officer of the city within the meaning of sec. 21 of the charter (ch. 124, Laws of 1891), which provides that "every officer elected or appointed to any office . . . may be removed from such office by a vote of three fourths of all the members of the common council; but no such officer . . . shall be removed without cause, nor unless charges are preferred against him," etc., although the section further provides that "the mayor may suspend any officer against whom charges have been preferred, until the disposition of the same."

2. The power to remove an officer of a municipal corporation for cause is administrative, not judicial, and may be vested in such a body as the common council.

3. The body in which such power of removal is vested (in this case the common council) is not subject to all the rules governing courts in the transaction of business. Thus, the fact that one alderman will act as mayor in case of the removal of the latter, and that another signed the charges upon which the mayor is tried, does not debar those aldermen from sitting as members of the council on the trial.

4. Whether, under the charter of Superior, the mayor is or is not a member of the common council, he cannot sit as such member upon the trial of charges against him as mayor.

5. The removal of an officer by the council being the exercise of an administrative and not judicial power, the members need not take any special oath to try the charges.

6. Witnesses sworn by the chairman of the committee of the whole, appointed by the common council to take evidence upon charges against the mayor, were duly sworn, under secs. 4053, 4080, R. S.

7. Upon a proceeding for the removal of the mayor the charge against him need not be drawn with the accuracy of an indictment, it being sufficient if he is furnished with the substance thereof; and while he has a right to insist upon a fair hearing and that the substance of the rules governing trials at law should be observed, he cannot require that the same precision and formality be observed which are required in criminal trials at law.

8. The mayor of a city was, by the charter, the head of the fire and police departments, with the power of appointment and removal. With his approval the chiefs of those departments went through them, shortly after his election, soliciting from the firemen and policemen contributions to a fund to reimburse him for his campaign expenses, and they collected large sums which were turned over to him. *Held*, that his receipt of such money was an offense justifying his removal from office by the common council.

CERTIORARI to review proceedings of the common council of the city of Superior. *Affirmed.*

At the April election, 1895, *Charles S. Starkweather*, the relator, was elected mayor of the city of Superior, and thereafter duly qualified and entered upon the duties of his office. On the 2d day of July, 1895, Angus McQueen, one of the aldermen of said city, filed with the common council charges of official misconduct against the relator. It is only necessary to set forth one of the charges so made, being charge No. 6, upon which the relator was afterwards found guilty and removed from office by the council. The said charge is as follows: "I hereby charge that the said *Charles S. Starkweather* did, on and between the 1st day of May and the 6th day of June, 1895, wilfully extort, in his office as mayor of the city of Superior and as chief of police and head of the fire department of the city, various sums of money from various policemen and firemen in the said city, contrary to section 4550 of the Revised Statutes of the State of Wisconsin."

Upon the filing of said charges the council adopted a resolution designating the 5th day of July as a day of hearing. On that date the relator, by his counsel, filed a motion that the proceedings be dismissed, on the ground that the council had no jurisdiction or authority to try him upon the charges. This motion was overruled by a vote of ten to eight. At this meeting, and also at the meeting held July 6th, the relator occupied the chair as presiding officer of the council. At the close of the meeting of July 6th an adjournment was

taken to the 8th day of July for the special business of considering the charges against the mayor. On the evening of the 8th day of July the mayor took the chair on the opening of the meeting, and directed the city clerk to call the roll, whereupon Alderman Atkinson moved that the president of the council take the chair and call the council to order. This motion was declared out of order by the mayor, and it appears that thereupon the mayor again ordered the city clerk to call the roll, and Alderman Atkinson put his motion to the house, and nine aldermen voted "aye," two "no," and the balance refused to vote on the question. At this time there was evidently great confusion in the council meeting, and, according to the claim of counsel for the relator, a motion was made and seconded that the council adjourn to Thursday evening following, on which eight aldermen voted in the affirmative and none in the negative, and the mayor declared the meeting adjourned. According to the return made to the writ, however, it appears that after Alderman Atkinson's motion was declared carried, Mr. Howe, president of the council, requested Alderman Green to take the chair, which he did, and requested the city clerk to call the roll, and, upon his refusal, proceded to call the roll himself, which showed ten members present. At this juncture the mayor, city clerk, and a portion of the aldermen left the council chamber, and ten aldermen remained, who proceeded to do business. Upon motion, which was carried by vote of ten "ayes" and no "noes," the relator was required to answer the charges preferred against him. The relator not being present, the plea of not guilty was, on motion, entered in his behalf. It was then moved and carried that the council proceed to take testimony upon the charges, and for that purpose the council resolved itself into a committee of the whole. Alderman Green was elected chairman of the committee of the whole, and Alderman Atkinson secretary.

The committee of the whole then proceeded to take a large amount of testimony on the various charges, and adjourned from day to day, as the occasion required. The committee met on the evenings of July 8th, 9th, 10th, and 11th, but at none of these times did the mayor, nor his attorneys, nor the city clerk, nor five of the aldermen, attend, until the meeting on the evening of July 11th, at which time all the last-named persons attended, that being the evening which the mayor and his friends claimed the council had adjourned to. The committee of the whole refused to recognize the adjournment, and proceeded with the taking of testimony. Thereafter, also, the mayor and his counsel and the five aldermen participated in the proceedings. July 12th, the mayor's counsel filed a motion to dismiss, because the committee was illegally organized, had never been appointed, and because the council had not convened July 11th, and because Aldermen Howe and McQueen were incompetent to sit. This motion was overruled. The committee continued to take testimony from day to day until July 15th, when it arose, and reported progress to the council, and secured permission to sit again, and thereafter continued to take testimony until July 29th, when it arose and reported the testimony to the council.

On July 25th, after the testimony for the prosecution was in, the relator moved that the charges be dismissed, because the council had no jurisdiction and was illegally composed, and because there had been a failure of proof to sustain the charges. This motion was overruled. At meetings of the council held on July 29th, 30th, 31st, and August 1st, the testimony taken by the committee of the whole was read in council, and at the meeting of August 1st, after argument by council, a resolution was adopted, by a vote of seventeen to one, by the common council, declaring that charge No. 6 had been proven, and removing the mayor from his office. At the regular meeting of the common council held Au-

gust 6th the relator was present and attempted to preside at the council meeting, but Alderman Howe, president of the council, demanded the chair, and was sustained by the common council, whereupon the relator vacated the chair. Thereupon the relator filed an affidavit in this court for a writ of *certiorari*.

*S. N. Dickinson* and *Heber McHugh*, for the relator, to the point that the last sentence of sec. 21 of the charter, authorizing the mayor to suspend any officer against whom charges have been preferred, is a legislative interpretation of the term "every officer" at the beginning of the section, and clearly exempts the mayor from its operation, cited *Speed v. Common Council*, 98 Mich. 360; *Scow Boat v. Lynn*, 1 Pin. 239.

For the respondent there was a brief by *Swift & Cooper* and *Crownhart, Owen & Foley*, and oral argument by *W. C. Owen* and *George C. Cooper*. They argued, among other things, that the office of mayor of the city of Superior is a legislative office, is under the complete control of the legislature, and the legislature may prescribe any method for removing its incumbent in its discretion. *Connor v. New York*, 5 N. Y. 285; *Long v. New York*, 81 id. 425; *People ex rel. Kingsland v. Palmer*, 52 id. 83; *People ex rel. Wood v. Draper*, 15 id. 532; *State v. Douglas*, 26 Wis. 428; *State ex rel. Tesch v. Von Baumbach*, 12 id. 310; Mechem, Pub. Off. § 465 and cases cited; *People ex rel. Gere v. Whitlock*, 92 N. Y. 191; *People ex rel. Platt v. Stout*, 19 How. Pr. 171; *People ex rel. Belch v. Bearfield*, 35 Barb. 254. The provision of the charter vesting in the common council the power to remove officers is not unconstitutional as authorizing the exercise of judicial powers by a municipal body. Dillon, Mun. Corp. (3d ed.), § 244, and cases cited; *Larkin v. Noonan*, 19 Wis. 82; *State ex rel. Moreland v. Whitford*, 54 id. 150; *State ex rel. Donnelly v. Teasdale*, 21 Fla. 652; *State ex rel. Att'y Gen. v. Hawkins*, 44 Ohio St. 109, 111;

*State ex rel. Gill v. Common Council of Watertown*, 9 Wis. 254; *State ex rel. Kennedy v. McGarry*, 21 id. 496; *State ex rel. Willis v. Prince*, 45 id. 612. In the absence of statutory provisions, the technical rules of legal procedure have no application in proceedings of this kind. All that is necessary is that the accused shall have reasonable notice of the charges preferred against him, and of the time when the same will be investigated, and an opportunity given to defend himself, and to examine and cross-examine witnesses, and to be represented by counsel. And the proceedings are not required to be carried on with that degree of preciseness which is usual in common-law pleading and practice. Tiedeman, Mun. Corp. 130; *People ex rel. Weston v. McClave*, 123 N. Y. 512; *McAuliff v. New Bedford*, 155 Mass. 216; *People ex rel. McCarthy v. Comm'rs*, 98 N. Y. 332; *State ex rel. Hart v. Common Council of Duluth*, 53 Minn. 238; *People ex rel. Flanagan v. Board of Police Comm'rs*, 93 N. Y. 97; *People ex rel. Swift v. Board of Police Comm'rs*, 99 id. 676; *People ex rel. Shipley v. Mays*, 117 Ill. 257; *Eckloff v. Dist. of Col.* 135 U. S. 240. If the language of the charges is such as to advise the accused generally of the nature of the accusations against him, they are sufficient. *State ex rel. Hart v. Common Council of Duluth*, 53 Minn. 238; *People ex rel. Flanagan v. Board of Police Comm'rs*, 93 N. Y. 97; *State ex rel. Kennedy v. McGarry*, 21 Wis. 496; *People ex rel. Shipley v. Mays*, 117 Ill. 257.

WINSLOW, J. The relator's material objections will be taken up in their order, as made.

1. It is said that the charter of the city confers no authority on the council to remove the mayor from office. Sec. 21 of the charter (ch. 124, Laws of 1891) provides as follows: "Every officer elected or appointed to any office, except watchmen, policemen and firemen, may be removed from such office by a vote of three fourths of all the members of

State ex rel. Starkweather vs. Common Council of the City of Superior.

the common council; but no such officer, except watchmen, policemen and firemen, shall be removed without cause, nor unless charges are preferred against him and an opportunity given him to be heard in his own defense.    The common council shall have power to compel the attendance of witnesses and the production of papers when necessary for the purpose of such trial, and shall proceed within ten days to hear and determine the case upon the merits thereof.    The mayor may suspend any officer against whom charges have been preferred, until the disposition of the same."

The mayor is an officer of the city, elected by the people by virtue of the provisions of the charter, and certainly the words "every officer elected or appointed to any office" are sufficiently comprehensive to include him.    Doubtless there would be no contention made as to this point were it not for the final clause of the section, which gives the mayor the power of suspension of any officer pending the hearing of charges against him.    It is said that this clearly indicates that the mayor is not one of the officers included within the section, because it would be absurd to give him the power to suspend himself.    The argument is not without a certain force, but, in view of the fact that the plain words of the section expressly include "every" city officer, we are disposed to regard the seeming inconsistency in the last clause as a careless or inaccurate expression, rather than a deliberate intent to exclude the office of mayor from the wholesome provisions of the statute.    Such an intent could have been easily and plainly expressed without difficulty, and not be left to be spelled out by abstruse reasoning.

2.  It is then argued that if the section includes the mayor it is unconstitutional — *first*, because it is a grant of judicial power and cannot be conferred on any body of men save "courts and justices of the peace;" and, *second*, because at least two of the aldermen were interested in the result, and hence the court is an unconstitutional court.    There are

certainly some decisions lending color to the view that the amotion of an officer of a corporation is purely an exercise of judicial power. *Dullam v. Willson*, 53 Mich. 392; *Tompert v. Lithgow*, 1 Bush, 176. The better authority, however, is clearly to the effect that the power to remove officers for cause, though to be exercised in a judicial manner, is administrative, not judicial. It is a part of the power of the corporation which is very useful, in fact almost necessary, for the efficient performance of the corporate duties, *State ex rel. Att'y Gen. v. Hawkins*, 44 Ohio St. 98; *Donahue v. Will Co.* 100 Ill. 94; 25 Am. Law Rev. art. " Removal of Public Officers," pp. 206, 207; Throop, Pub. Off. §§ 345, 346. · In this state the exercise of the power by similar bodies does not seem to have been questioned until now, though the cases have been quite numerous. *State ex rel. Gill v. Common Council of Watertown*, 9 Wis. 254; *State ex rel. Kennedy v. McGarry*, 21 Wis. 502; *State ex rel. Willis v. Prince*, 45 Wis. 610. An office is not regarded as property or as a vested right, and the legislature which creates it may, in the absence of constitutional restrictions, undoubtedly make such a provision as the one in question here for the removal of the incumbent. Throop, Pub. Off. § 345. This view of the character of the power of amotion goes far towards disposing of a number of the objections made by the relator to the validity of the proceedings in question. The common council, not being a court but merely an administrative body, is not subject to all the rules governing courts in the transaction of business; and thus it undoubtedly is the law that the fact that one of the aldermen will discharge the duties of mayor in case of the removal of the mayor, and that another of the aldermen signed the charges upon which the mayor was tried, does not bar these aldermen from sitting. The legislature has power to designate the officers who shall possess and exercise the power of removal, and it has designated in this case the common council. It created the office, and it may pro-

vide for the removal of the officer; and it may undoubtedly provide for such removal by a body, one of whom will be called to exercise the duties of mayor in case of his removal. Nor is there any affidavit of prejudice provided for by the statute. Passion and prejudice frequently play an important part in such proceedings as those before us, but in the absence of constitutional or legislative restrictions they do not disqualify the members of the removing board from acting. *Ita lex scripta est. Andrews v. King,* 77 Me. 224.

3. It is argued that by the charter of the city the common council is composed of the mayor and board of aldermen, and that the aldermen alone could not act nor make a valid order of removal. There is some confusion in the charter as to the constitution of the common council. In one section it is said that the corporate authority of the city shall be vested in one principal officer, the mayor; in one board, which shall be known as "the common council of Superior," etc.; thus clearly recognizing the common council as a separate and distinct body. In another section it is said: "The mayor and aldermen shall constitute the common council." In many other places, however, in the charter, the distinct character of the board of aldermen as constituting the common council is clearly recognized. The discussion of the subject, however, is not essential. In sitting under the provisions of sec. 21 there can be no doubt that the common council there referred to is composed of the aldermen alone, for manifestly the mayor could not be one of the board which was to decide his own case. This principle is not in need of authority to support it. When the charges were presented against the mayor, and the council voted to consider them, it was his manifest duty to withdraw as the presiding officer; and the council did entirely right when they placed the president of the council in the chair, and disregarded the mayor's ruling and declaration of adjournment on the evening of July 6th. No other course was proper.

The decisions holding that where the power of removal is vested in two bodies both must join in the proceedings, have no application here. There are not two bodies here. The most that can be said here is that the mayor is a member of the removing body. If he is incapacitated from acting, the remainder of the board may unquestionably act.

4. A number of objections are made to the regularity of the proceedings, which will be considered briefly. In the discussion so far it has been established that the removal of the mayor was the exercise of administrative and not judicial power. It clearly follows from this consideration that the aldermen, in passing on the question of removal, are not acting as judges, but in their capacity as aldermen. The objection, therefore, that the aldermen should have taken a special oath to try the charges against the relator is not tenable, because the oath taken by them as aldermen covered all their administrative duties, of which this is one. Nor can it be successfully objected that the witnesses were not sworn. They were in fact sworn by the chairman of the committee of the whole, which was sitting under authority of the council for the purpose of taking the evidence upon the charges against the mayor. We regard this as a committee appointed by the council to investigate the official conduct of the mayor, and consequently we think the witnesses were duly sworn under sec. 4080, and sec. 4053, R. S.

Examination of the return convinces us that there is no substantial error or irregularity affecting justice in the proceeding resulting in the order of removal in this case. All the testimony was heard in committee of the whole, the committee adjourning from day to day as it became necessary. The mayor did not, at first, participate in the hearing, but after several days came in, and, with his counsel, took part in the proceedings, examined witnesses, and was himself examined. After all the testimony was in, it was read at length to the council, and argued at length, and not until then was

final action taken. This was not a common-law trial, but an investigation. While the mayor had a right to insist that he have a fair hearing, and that the substance of the rules governing trials at law should be preserved, he cannot require that the same precision and formality be observed which are required in criminal trials at law. These principles govern the charges made, as well as the procedure. The charge does not need to be drawn with the accuracy of an indictment; it is sufficient if the accused be furnished with the substance of the charge against him. Throop, Pub. Off. § 380; 25 Am. Law Rev. art. "Removal of Public Officers," by Berryman, pp. 226, 227. In view of this general principle, we regard the charge upon which the mayor was removed as sufficiently definite and certain for the purposes of the hearing.

Examination of the evidence also amply justifies the finding of the council. The mayor was, by the charter, head of the fire and police departments, with the power of appointment and removal. It is clearly shown that the chiefs of these two departments, with the approval of the mayor, went through their respective departments in May and June, soliciting the firemen and policemen to make contributions to a fund to reimburse the mayor for his campaign expenses, and they collected large sums, which were turned over to the mayor. Some of the men say they paid it voluntarily, and some say they paid it because they thought it would help them keep their positions. The mayor admits the receipt of the money, but says he only took it after learning that there had been no compulsion used and that the men gave it voluntarily and not to secure their positions. Granting the honest intention of the mayor, it is apparent that he erred grievously. It needs no argument or authority to show that the receipt of this money, wrung from city employees who were subject to the mayor's power of removal at any moment, was a serious offense against his oath and the duties of his office. The fact (if fact it be) that the

mayor himself cannot appreciate or understand that there is anything reprehensible in his action, simply demonstrates his unfitness for the office to which he was elected.

Upon the whole case it seems to us that substantial justice has been done, and that the order of the common council removing the relator from office must be affirmed.

*By the Court.*— The proceedings and order of removal of the relator from his office as mayor of the city of Superior are affirmed.