ROBERT H. TODD, Petitioner and Appellant, *v.* MUNICIPAL ASSEMBLY OF SAN JUAN, Respondent and Appellee.

No. 4739. Argued November 9, 1928.—Decided February 14, 1929.

*Feliú & La Costa* for the appellant. *R. Martínez Nadal, R. Sancho Bonet* and *L. A. Castro* for the appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

The facts that appear in the record are as follows:

On August 13, 1928, the mayor of San Juan, Porto Rico,

called a special session of the municipal assembly of San Juan for the 14th of the same month and year, stating in the call the matters to be considered in that session. No mention was made in the call of an impeachment of the mayor or of investigating the conduct of that officer.

The municipal assembly of San Juan met in special session on the 14th and 15th of the said month and year, and on the latter date suspended its legislative session and formed itself into a tribunal for hearing charges presented against mayor Robert H. Todd by José Torres Silva of San Juan. The charges were read and it was decided by a majority vote to institute an impeachment proceeding against the mayor based on the charges made and to suspend the mayor from office and from receipt of salary. At this session were present, according to the minutes, seven of the eleven assemblymen who composed that municipal body.

Robert H. Todd petitioned the District Court of San Juan for a writ of certiorari for the purpose of reviewing the resolutions adopted by the assembly for his suspension from office and receipt of salary and for his impeachment, praying the court to order at the same time a stay of all proceedings in regard to those resolutions. The court issued the writ and ordered the suspension of the resolutions of the assembly referred to by the petitioner until the final determination of the certiorari proceeding. The documents were sent up, the case was heard and the court rendered the following judgment:

"For the reasons set forth in the statement of the case and opinion attached to the record and made a part of this judgment the petition in certiorari is sustained as regards the resolution of the municipal assembly of San Juan of August 15, 1928, suspending petitioner Robert H. Todd from office and salary as mayor of San Juan during the consideration of the charges formulated by José Torres Silva and on which the impeachment proceeding was based, and consequently that resolution is set aside; and it is ordered that the original documents sent up in obedience to the writ of certiorari issued on August

16, 1928, be remanded for further proceedings not inconsistent with this opinion, without special imposition of costs."

The judgment is accompanied by an opinion which appears in the transcript.

This appeal was taken from that judgment by the mayor of San Juan.

The appellant assigns four errors which are argued jointly, a practice which is not that established by our rules.

The first assignment of error is as follows:

"I. The District Court of San Juan erred in not holding expressly that the resolution of the municipal assembly of August 15, 1928, was null and void in so far as it instituted impeachment proceedings against the appellant mayor."

We observe that in fact this assignment of error is not argued on its merits. It is evident from a study of the opinion of the court that at least it intended to decide the matter referred to. In this respect the judgment is defective for lack of expression and because it does not annul expressly the original writ of certiorari. In the matter of judicial decisions it is necessary to avoid implications so as to make clear and certain that which requires pronouncement and declaration. This is still more necessary in cases in which there exists a legal status created perhaps by a transitory decision, but a decision nevertheless, and that legal status should be made final or reversed, the new status prevailing in the first case or things being returned to their former state before rendition of the transitory decision.

It is clear that the appellant could not sustain at the same time the opposed and contradicting positions that appear from a comparison of the first assignment with the other three. It is also clear that the tendency of the court was to hold that the assembly had a right to bring charges against the mayor and impeach him. Consequently we must dismiss this supposed error.

The other assignments are as follows:

"II. That the district court likewise erred in holding that the said resolution of the Assembly is valid as to that part thereof which is involved in this proceeding.

"III. That the district court likewise erred in holding that the Assembly could institute such impeachment proceeding against this appellant in a special session called to consider only matters entirely foreign and distinct from an impeachment.

"IV. That likewise the said district court erred in holding that a majority of the Assembly can constitute it into a court of impeachment or into a session of any purpose or nature without the unanimous vote of all of the members of the Assembly to sit as a court of impeachment."

These assignments are argued as a single assignment, and this is the practice followed by both parties.

The appellee does not limit itself to arguing the questions raised by the appellant, but raises other questions whose consideration and determination may be of interest.

The first question raised by the appellee refers to the adequacy of certiorari as a remedy in the case. This matter was argued extensively with citations of authorities. But this court is compelled to consider first another proposition: The municipal assembly of San Juan was a party to this certiorari proceeding in which there were two matters to be decided, i. e., the impeachment and the suspension of mayor Todd from office and salary. The case was decided by holding that the assembly could suspend the mayor from office and salary while leaving pending the impeachment proceeding. Petitioner Todd appealed, but the assembly took no action, thereby accepting the judgment, and in coming before the Supreme Court in the present appeal its position is that of an appellee who acquiesces in the judgment and not that of a party who comes to attack it. For this it had a recourse of appeal. The question to be decided by us is this: Can the appellee, who has failed to take any action, attack the judgment? The answer must be in the negative.

On different occasions this court has repeated the current

theory that the party who consents to a ruling can not raise the question of errors therein. In *F. Gavilán & Co.* v. *Viuda de Garriga & Hijos et al.*, 38 P.R.R. 372, the Latin maxim *Consensus tollit errorem* follows this holding:

"An error was committed against the said firm perhaps, but in general on appeal only errors committed against an appellant may be corrected."

Certainly, the litigant who consents to a judgment can not plead the character of "aggrieved party" required by section 294 of the Code of Civil Procedure.

It is a well established rule that courts of appeal will examine only the errors pointed out by the appellant. *Jackson* v. *F. R. W. Co.*, 14 Cal. 22. And that the errors alleged by the appellee to have been committed by the trial court will not be taken into consideration. *Poppe* v. *Athearn*, 42 Cal. 606.

These cases were cited by this court in *Puig et al.* v. *Succession of Polanco*, 16 P.R.R. 705; in *Rivera* v. *Brignoni*, 17 P.R.R. 1157, and in the *Gavilán Case, supra*.

However, for the purposes of our opinion we should say something about certiorari and its origin.

Let us begin by considering section 2 of the Municipal Law and its importance as a bar to certiorari proceedings.

There is no doubt that the mayor may appeal to the Supreme Court of Porto Rico from the decision of the municipal assembly in an impeachment against him. But for the exercise of that right and even for its accruement the entire proceeding must have been followed and a decision rendered. Can this mean that the official has no remedy against the institution of such proceeding and that he must await the result of the proceeding, during which time his name, his peace of mind and his reputation are in jeopardy?

If the appeal is allowed from the decision of the assembly finding on the charges and concluding on what we might call penalty, that is no bar to the institution of other proceed-

ings in regard to other acts prior to that decision. In the present case the certiorari proceeding was interposed with relation to the suspension from office and salary and the establishment of impeachment. From those proceedings the appeal mentioned in the brief of the appellee does not lie, unless it be argued that the appeal from the final decision includes the initial and the interlocutory decisions in this class of cases; and this does not appear to be the case.

As to whether or not certiorari lies against such decisions as are included in the present case, owing to their special nature, that is, because they are, as claimed by the appellee, of a judicial nature, here we must consider such resolutions, certiorari in general and the special provision of the Municipal Law.

We transcribe the following paragraphs from the opinion delivered by the district judge, as they should be taken into account:

". . . . the act of resolving to receive and hear such charges, to institute impeachment proceedings and to suspend the mayor from office and salary, is not of a judicial nature."

And further:

"All of this is in harmony with the most elementary principles of due process of law. To bring and to hear charges are two different things. When the assembly brings charges it is accusing, and when the assembly is hearing the evidence for and against such charges, and decides thereon, it is acting as judge. The former is an administrative action, a mere administrative function, an act of investigation; the latter is a judicial action, purely the work of a judicial body, of a court intrusted with the duty of meeting out justice in such cases. The judicial action does not begin until the latter stage is reached. We are in the first stage: When the defendant assembly brings charges against the petitioner in the exercise of a perfectly administrative action. It is clear that this Court has full jurisdiction of that administrative act.

"It has been held that the power to remove an officer for cause, although exercised in judicial form, is of an administrative nature. State v. Dahl, 122 N. W. 748; Stiles v. Lowell, 233 Mass. 174; State

v. Superior, 90 Wis. 612; San Antonio Fire, etc. v. Bell, 223 S.W. 506; State v. Kennely, 75 Conn. 704.''

In the Massachusetts case cited in the opinion (*Stiles* v. *Lowell*, 233 Mass. 174) there was a statute giving the municipal council, under the laws regulating the civil service, authority to suspend or remove any administrative or executive officer or head of department whom it had authority to appoint. In referring to the class of authority exercised by those who made the removals the court said that if they had followed the rules of the civil service laws the functions exercised by them were to some extent judicial. It then said:

"The power to remove an officer in the public service is in its nature executive, when considered by itself alone. *Murphy* v. *Webster*, 131 Mass. 482. When, as essential prerequisites to the exercise of that power, there must be formulation of specific charges as grounds for removal, notice of those charges to the person to be removed, opportunity to him for a hearing, followed by a hearing and decision, then the hearing and decision partake also of the 'nature of a judicial investigation.' *McCarthy* v. *Emerson*, 202 Mass. 352, 354. *Drisoll* v. *Mayor of Somerville*, 213 Mass. 493, 494. *Swan* v. *Justices of the Superior Court*, 222 Mass. 542, 548. *State* v. *Common Council of Superior*, 90 Wis. 612, 619. The functions of the members of the municipal council are like those of selectmen in deciding upon the qualifications of voters, which, as was said by Chief Justice Shaw, are 'in this respect, to some extent judicial.' *Blanchard* v. *Searns*, 5 Met. 298, 300. Speaking with accuracy, the removal by a municipal council under these circumstances is still an executive or administrative act which must be performed in this particular in a judicial manner. See *Lavangie's Case*, 228 Mass. 213.''

It appears clearly that in a majority of cases the courts have distinguished between the power or authority to remove and the manner or form of exercising that authority. And yet it seems to us that section 29 of the Municipal Law, if carefully studied, does not go beyond creating the authority and marking its scope; but it does not establish the procedure. It fixes the authority to bring charges, investigate, hear and decide, but in reality it does not mark the procedure.

The right, authority or power to receive the charges and establish or hear the accusation is of an administrative nature. The assembly does not become a court except for hearing and deciding, and until the moment arrives for hearing and deciding the assembly acts in its normal capacity, that is, as an administrative body and not in the exceptional character of a judicial body. For that reason we find that the municipal assembly of San Juan was acting purely in its administrative capacity before it met to receive and hear the evidence and decide in regard to the suspension or removal of the officer. The judicial or quasi judicial faculty with which such bodies are clothed is exceptional and beyond the usual scope of their attributes. Assemblies and councils are not judicial bodies or organisms, nor parts of the judicial power of the State, and when they are given authority to act judicially that faculty can not be construed liberally, inasmuch as restrictive construction is proper for all exceptional cases.

At the session held by the municipal assembly of San Juan on August 14 and 15, 1928, at 10 p.m. of August 15, 1928, José Torres Silva delivered to the secretary a writing addressed to the assembly requesting the trial and suspension from office of the mayor and the taking of the necessary steps for that purpose. There were present at that session the following assemblymen who constituted a quorum: Dr. López Sicardó, Francisco Angleró, Pedro J. Barbosa, Ramón Cabrera, Luis A. Castro, Gonzalo Diago and Marcos Ferrer Calderón. Assemblyman Pedro J. Barbosa moved that the assembly suspend its regulations, adjourn its session as a deliberative body and convert itself into a tribunal to hear the charges made aginst the mayor by the citizen José Torres Silva. The motion was carried and then the charges were read; whereupon assemblyman Castro moved to impeach the mayor on the charges brought against him, a copy of which should be given to him, fixing a term for him to answer the

charges, setting a day for the hearing and suspending the said officer from office and salary.

Whatever may have been the measure adopted in regard to suspension of the regulation, it could never be effective for converting into a judicial act that which was essentially only an administrative act. That charges had been made would not authorize the assembly to convert itself *ipso facto* into a court. It is necessary first to adopt a resolution for considering the charges and determining whether they should be submitted to the judicial or quasi judicial authority, power or jurisdiction of the assembly. In the present case the assembly converted itself into a judicial body prematurely. The motion of Castro was voted for by assemblymen Barbosa, Castro, Diago and Angleró; assemblymen Cabreras and López Sicardó voted against it and assemblyman Ferrer did not vote.

By Castro's motion it was resolved "to establish an *impeachment proceeding against the said mayor*" (italics ours). This shows that no proceeding whatever had been initiated. Therefore, the assembly was not, and could not be, constituted as a court.

The District Court of San Juan was within its jurisdiction in acting on the certiorari proceeding.

We have examined the call for the special session of the municipal assembly of San Juan for August 14, 1928. As a question of fact it must be found that neither the charge against the mayor nor his impeachment appears among the matters to be submitted to that deliberative body.

One of the first questions raised and discussed is presented as follows:

"In Porto Rico a municipal assembly can not institute impeachment proceedings against a mayor at a special session which has been called to consider and decide matters entirely foreign to that of impeachment."

Both parties argued this point as the pivot of the appeal. There is no need to consider whether or not the municipal

assemblies have inherent power to remove the mayors. Section 29 of the Municipal Law gives to the assemblies the right to bring impeachment proceedings against the mayors, although we find that that statute might have been drafted more completely so as to establish clearly the right to decide, since it fixes those to hear and investigate the charges, to call witnesses, and to punish for contempt. But the authority to adjudicate is understood in impeachment proceedings, although with the limitation established in section 2 of Article I of the Constitution of the United States as regards impeachment by the Congress, that is, that in cases of impeachment judgment shall not extend further than to removal from office and disqualification to hold any office of honor, trust or profit, albeit the person convicted shall be liable and subject to indictment, trial and punishment according to law. A distinction is thus made between administrative and purely judicial authority, and the independence of powers and sacred limits of their spheres are better declared.

The assembly has ample opportunity to perform acts of impeachment in its regular sessions and perhaps otherwise; but in sessions called by the mayor the assembly must limit itself to the matters mentioned in the call.

Paragraph three of section 18 of the Municipal Law fixes the holding of special sessions as follows:

"It shall also hold special meetings whenever necessary which shall last not more than two (2) days in all municipalities. Such special meetings shall be called by the Mayor. Besides, the municipal assembly shall hold an extraordinary special meeting every year, to consider the regular budget for the following fiscal year, which meeting shall not last more than five days in the municipalities of the first class and three days in those of the second and third classes."

As acknowledged by both parties, the law does not establish expressly the procedure to be followed in holding these meetings. Does this mean that municipal assemblies, as far as the holding of special meetings is concerned, may

proceed as they may think fit, without regard to the constant and usual form established for legislative bodies? Certainly not.

We believe that this gap in the law is filled by its section 24 in prescribing that the limitations imposed by the Organic Act of Porto Rico on the Legislature and its members shall be applicable, as far as possible, to the municipal assembly and the members thereof. If necessary, this provision may be considered as restrictive, and this might be more congruent with the legislative purpose.

Section 33 of the Organic Act provides that in special sessions of the Legislature the only matters to be considered are those specified in the call. No legislative action shall be taken on matters which are not specified therein.

If there is no impossibility or incompatibility in applying that limitation of the Organic Act to the municipal assemblies, then it is or should be the rule to be applied to the special sessions of the assemblies. There is a good and logical reason which requires that those who meet to deliberate and adjudicate in regard to matters affecting a community should have previous knowledge or notice of what matters are to be submitted to their consideration. This is the rule which has been a constant guide in legislation in cases of bodies which deliberate and adjudicate and we find nothing in the Municipal Law that prevents the application of the general rule.

On the other hand, we find in this particular case something which strikes our attention. The assembly is called for a special session. The call contains twenty-six chapters stating in detail the matters to be submitted for consideration and among them no accusation against the mayor appears. The session is opened under that call and on the second day charges are formulated against the mayor. The first resolution adopted is the suspension of the regulations in order to consider or hear the charges. Such procedure seems strange and is not followed in connection with other

matters which are as important or more important. The president considered it illegal and so stated explicitly.

That does not mean in any way that the municipal assembly has not the right to receive charges against the mayor, for it may do so at any time as an administrative act, or that it has no authority to bring impeachment proceedings. But this must be done in legal form and in such a way as to guarantee fully the rights of the assemblymen and of the accused.

The case may be reduced to the following: If the limitation prescribed in section 33 of the Organic Act is applicable, and we think it is, the municipal assembly has no authority to consider a matter which does not appear in the call for that session.

As to the authorities cited by the appellant, we are not quite sure that they are applicable to the case. Thus the case of *Shugars* v. *Hamilton*, 92 S. W. 564, refers chiefly to the necessity of giving written notice of the holding of a special meeting and that the session should be held at the place previously designated by ordinance. But we find in the opinion a paragraph which explains the legal doctrine which must be taken into account. It is as follows:

"The council is the legislative body of the city, and occupies towards it the same general relation as the General Assembly of the State does towards the people of the state, and it is important for the well-being of the city and the proper administration of its affairs that the people of the city who are interested in its governmental affairs shall know when and where their local legislative body is to meet, and when special meetings of the council are called, as they may be, each member of the council who can be notified is entitled to have written notice of the time and place of the meeting, so that all of the council may be present and participate in the deliberations of the municipal body."

In *Mills* v. *City of San Antonio*, 65 S. W. 1121, there was a municipal charter providing that the mayor could call special sessions, the purpose of which should be submitted to the council in writing. and that the call should enumerate

the matters to be considered. In that case there was the direct and express authority of the charter.

The authorities are not exact and uniform on the point under discussion. But it is a fact that in our Organic Act appears the limitation already mentioned as regards special sessions. That this limitation is applicable to municipal assemblies seems also clear and logical.

Any doubt that could arise here would spring from the character of the act performed by the assembly, i. e., whether it was of an administrative, legislative or judicial nature. As to the presentation and receipt of charges, we have said that these acts are of an administrative nature and that the proceeding so far had nothing to make it judicial. If that is so, the limitations established by our Organic Act extend to the municipal assemblies in such cases and they can not act on a matter not appearing in the call.

The argument that if the impeachment must be included in the call, the mayor, who would be the possible accused, would never make a call including that matter, seems to us to have little weight. Apart from the fact that that is only a possibility and not a certain fact, such charges could be brought at any regular session, with or without the consent of the mayor.

For the foregoing reasons the judgment appealed from must be reversed, sustaining the certiorari and setting aside the resolution of the municipal assembly of San Juan instituting the impeachment proceeding.