ROBERTO H. TODD, peticionario y apelante, *v.* ASAMBLEA MUNICIPAL DE SAN JUAN, recurrida y apelada.

No. 4739.—*Sometido:* Noviembre 19, 1928. *Resuelto:* Febrero 14, 1929.

*Feliú & La Costa,* abogado del apelante; *R. Martínez Nadal, R. Sancho Bonet y L. A. Castro,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Los hechos que aparecen de lo actuado son éstos:

En 13 de agosto de 1928, el Alcalde de San Juan de Puerto Rico, convocó una sesión extraordinaria de la Asamblea Municipal de San Juan, para el día 14 de los mismos mes y año, expresando la convocatoria los asuntos a tratar en tal sesión. En la convocatoria no se hace mención alguna de *impeachment* del alcalde, o de consideración de la conducta de dicho funcionario.

La Asamblea Municipal de San Juan se reunió en sesión extraordinaria los días 14 y 15 de dichos mes y año; y en la última de las expresadas fechas, suspendió su sesión legislativa, y se constituyó en tribunal para conocer de una acusación o capítulo de cargos que, contra el alcalde Roberto H. Todd, presentó José Torres Silva, de San Juan, P. R. Se dió lectura a la acusación, y por mayoría de votos, se resolvió que se establecía un procedimiento de *impeachment,* contra el alcalde, sobre la base de la querella presentada y se suspendió al alcalde, en su empleo, y en la percepción de sueldo. A esta sesión concurrieron, según el acta, siete de los once asambleístas que constituyen aquel cuerpo municipal.

Roberto H. Todd presentó ante la Corte de Distrito de San Juan, P. R., una petición de *certiorari,* en la que se solicitó la expedición del auto para que se remitiera lo actuado, y se revisaran los acuerdos tomados por la asamblea en cuanto a la suspensión en el empleo y sueldo, y al *impeachment,* y al mismo tiempo, se ordenara la suspensión

de todo procedimiento en cuanto a tales acuerdos. La corte libró el auto, ordenando la remisión de la documentación, y la suspensión de los acuerdos de la asamblea a que la petición se refiere, hasta la resolución definitiva del recurso de *certiorari*. Se remitió la documentación; y se celebró la vista del caso. Y la corte dictó sentencia, cuyo texto es así:

"Por los fundamentos consignados en la relación del Caso y Opinión unida a los autos y que se hace formar parte de esta sentencia, se declara con lugar la solicitud de *certiorari*, en cuanto se refiere al acuerdo o resolución de la Asamblea Municipal de San Juan, de 15 de agosto de 1928, por el cual el peticionario Roberto H. Todd fué suspendido de empleo y sueldo como Alcalde de San Juan, durante la sustanciación de los cargos formulados por José Torres Silva, y que sirvieron de base para el procedimiento de impugnación pública (*impeachment*), y en su consecuencia se anula dicho acuerdo o resolución; y se ordena la devolución de los documentos originales remitidos por virtud del auto de *certiorari* expedido el 16 de agosto de 1928, para ulteriores procedimientos no inconsistentes con esta opinión: sin especial condenación de costas."

A la sentencia se une opinión, que aparece en la transcripción.

Contra esa sentencia se ha interpuesto el presente recurso, por el Alcalde de San Juan.

Se señalan por el apelante cuatro errores, que se discuten conjuntamente, procedimiento que no es el que se establece por nuestras reglas.

El primer señalamiento de error es así:

"1. Que la Corte de Distrito del Distrito Judicial de San Juan erró al dejar de resolver expresamente que el acuerdo de la Asamblea Municipal apelada, de agosto 15 de 1928, era nulo e ineficaz, en tanto en cuanto por el mismo se instituyó procedimiento de *impeachment* contra el Alcalde apelante."

Notamos que, en realidad, no se discute o argumenta fundamentalmente este señalamiento de error. Para el que estudie la opinión de la corte, es claro que ésta cuando menos, quiso resolver el extremo de que se trata. La sentencia en este particular, es defectuosa, por falta de expresión,

y porque no hace anulación expresa del auto original de *certiorari*. En materia de resoluciones judiciales, es necesario huir de lo implícito, para dar la mayor claridad y seguridad a lo que requiere pronunciamiento y declaración. Y esto más aún en los casos en que existe un estado de derecho, creado por una resolución transitoria quizás, pero resolución de todas maneras, y cuyo estado de derecho debe ser, o elevado a final o revocado y destruido, prevaleciendo, en el primer caso, el nuevo estado, o volviendo los cosas al en que se hallaban antes de dictarse la disposición transitoria.

Es evidente que el apelante no podía sostener, al mismo tiempo, las opuestas y contradictorias posiciones que aparecen de la comparación del primer señalamiento con los otros tres. Y es claro también que la tendencia de la corte fué resolver que la asamblea tenía derecho a iniciar y seguir el procedimiento de acusación y juicio contra el alcalde. Debemos, por consiguiente, descartar este supuesto error.

■ Los otros señalamientos, son así:

"II. Que igualmente erró dicha Corte de Distrito al fallar y resolver, en efecto, que el tal acuerdo de dicha Asamblea apelada, es válido en lo que respecta a la parte del mismo que es objeto de este recurso.

"III. Que igualmente cometió error dicha Corte de Distrito al resolver, en efecto, que la Asamblea apelada podía válidamente instituir tal procedimiento de *impeachment* contra este apelante en una sesión extraordinaria convocada para considerar únicamente asuntos enteramente ajenos y distintos de un *impeachment*.

"IV. Que igualmente erró la dicha Corte de Distrito al resolver y fallar, en efecto, que una mayoría de la Asamblea apelada puede constituir a ésta en tribunal de *impeachment* o en sesión para cualquier objeto, o de cualquiera naturaleza, sin que medie el consentimiento unánime de la totalidad de los miembros de la Asamblea apelada para celebrar sesión como tal tribunal de *impeachment*."

Se discuten y argumentan como uno solo; y éste es el procedimiento que siguen ambas partes en el caso.

No se limita la discusión, por parte de la apelada, a las

cuestiones propuestas por la parte apelante, sino que se levantan otras, cuyo examen y resolución puede tener interés.

La primera cuestión que plantea la parte apelada se refiere a la procedencia del *certiorari* como remedio en el caso. Arguméntase este punto con extensión, y ofreciéndose citas de autoridades. Pero es forzoso a esta corte estudiar, como previa, otra proposición: La Asamblea Municipal de San Juan ha sido parte en este procedimiento de *certiorari*, en el que había dos extremos para resolución: el *impeachment* y la suspensión de empleo y sueldo del alcalde Sr. Todd: el caso se resolvió declarándose, en esencia, que la Asamblea no podía suspender de empleo y sueldo al alcalde, y dejando vivo el procedimiento de *impeachment*. Apeló el peticionario Sr. Todd, y no ejercitó recurso alguno la asamblea; para ésta la sentencia está aceptada; y al venir ante el Tribunal Supremo en esta apelación, su posición es la de parte apelada, que sostiene la sentencia, y no la de una parte que viene a atacarla; para esto tuvo un camino, el de la apelación. La pregunta que se impone a nuestro juicio es ésta: ¿Puede la parte apelada, que no ha ejercitado recurso alguno, atacar la sentencia? La contestación debe ser negativa.

En ocasiones distintas ha repetido este tribunal la teoría corriente de que el que consiente una resolución no puede alegar, con provecho, los errores en la misma. En el caso *F. Gavilán y Co.* v. *Viuda de Garriga y otros,* 38 D.P.R. 416, se incluye la fórmula latina ''Consensus tollit errorem'', a raíz de decirse esto:

''Tal vez se cometió un error contra dicha firma pero generalmente en apelación sólo pueden corregirse los errores cometidos contra un apelante.''

Ciertamente, el litigante que consiente una sentencia, no puede invocar el carácter de ''parte agraviada,'' que se requiere por el artículo 294 del Código de Enjuiciamiento Civil.

''Es una regla bien establecida que las cortes de apelación exa-

minarán solamente los errores señalados ·por el apelante (*Jackson* v. *F. R. W. Co.*, 14 Cal. 22) y que no se tomarán en consideración aquellos errores que el apelado alegue haberse cometido por la corte inferior (*Popper v. Atheara*, 42 Cal. 606.)''

Se ha hecho esta cita por este tribunal en el caso *Carmen Puig y Monserrate Orrach* v. *Sucesión de Jacinto Polanco,* 16 D.P.R. 741; y se citó en los casos *Rivera* v. *Brignoni,* 17 D. P. R. 1204, y el de *F. Gavilán y Co.* v. *Viuda de Garriga y otros, supra.*

 No obstante, y para los fines de nuestra opinión, debemos decir algo sobre el *certiorari* y su procedencia.

Empecemos por el examen del artículo 2do. de la Ley Municipal, y su importancia como obstáculo a la petición de un *certiorari.*

Es indudable que, contra la resolución que la asamblea municipal dicte en un caso de acusación o *impeachment* contra el alcalde, tiene éste el recurso de apelación para ante el Tribunal Supremo de Puerto Rico. Pero para que este derecho pueda ejercitarse, y aún, para que nazca este derecho, se precisa que se haya seguido todo el procedimiento y se haya dictado una resolución. ¿Puede esto significar que contra la instalación de un procedimiento de esa clase no tenga el funcionario remedio alguno, y se vea forzado a esperar durante toda la tramitación, y a que en el tiempo que ella dure, y durante ella queden en peligro su nombre, su tranquilidad y su reputación?

Si el recurso de apelación se da contra la resolución de la asamblea declarando acerca de los cargos y decidiendo lo que pudiéramos llamar penalidad, ello no impide que para los demás actos anteriores a esa resolución se establezcan otros procedimientos. El *certiorari* en este caso se ha interpuesto con relación a la suspensión de empleo y sueldo y al establecimiento de acusación. Y contra esos procedimientos no hay el recurso de apelación de que se hace mérito en el alegato de la parte apelada, a menos que se arguya que el recurso contra la resolución final, abraza las resoluciones ini-

ciales y las intermedias en esta clase de casos: lo que no parece ser así.

En cuanto a si cabe o no el recurso de *certiorari* contra resoluciones de la clase de las comprendidas en este caso, en atención a su esencial naturaleza, esto es, por ser ellas, según la apelada, de carácter judicial o cuasi judicial, aquí es forzoso el estudio de tales resoluciones, y el del *certiorari* en general y el especial de la Ley Municipal.

De la opinión que redactó el juez de distrito en este caso, tomamos, porque deben ser tenidos en cuenta, los siguientes párrafos:

" . . . el acto de tomar el acuerdo de recibir tales cargos, ordenar su lectura, disponer el procedimiento de impugnación pública, y 'suspender de empleo y sueldo al querellado, no tiene el carácter de judicial.''

Y luego:

''Todo esto está en armonía con los más elementales principios del debido procedimiento de la Ley. Acusar y juzgar son dos cosas distintas. Cuando la asamblea formula sus cargos, está acusando; y cuando la asamblea está oyendo las pruebas en pro y en contra de esos cargos, y los resuelve, está juzgando. El primer acto, es uno de administración, es una mera función administrativa, acción fiscalizadora; el segundo acto, es uno judicial, de pura labor de cuerpo juzgador, de tribunal encargado de hacer justicia en esos casos. La acción judicial no comienza hasta el segundo de estos actos. Y estamos' en el primero; cuando la asamblea demandada acusa al peticionario, en el ejercicio de una perfecta acción administrativa. Y es claro que para conocer de ese acto administrativo, esta Corte tiene perfecta jurisdicción.

''Se ha resuelto que la facultad de destituir por causa a un funcionario, aunque se ejercite en forma judicial, es de carácter administrativo. *State* v. *Dahl* (Wis.), 122 N. W. 748; *Stiles* v. *Lowell*, 233 Mass. 174; *State* v. *Superior*, 90 Wis. 612; *San Antonio Fire etc.* v. *Bell* (Tex. Civil A.) 223 S. W. 506; *State* v. *Kennely*, 75 Conn. 704.''

En el caso de Massachusetts que en la opinión se cita (*Stiles* v. *Lowell*, 233 Mass. 174) había un estatuto que daba al concejo municipal el poder, bajo las leyes reguladoras del

servicio civil, de suspender o destituir a cualquier funcionario administrativo o ejecutivo o jefe de subdepartamento a quien tenía facultad de nombrar. Y la corte, al tratar de la clase de función ejercitada por los que hicieron la destitución, dijo que si ellos habían seguido las reglas de las leyes de servicio civil, las funciones que ejercían fueron, hasta un cierto punto, judiciales. Y luego dijo:

"El poder para destituir a un funcionario en servicio público es por su naturaleza ejecutivo, cuando se le considera sólo por sí mismo. Murphy v. Webster, 131 Mass. 432. Cuando, como prerequisitos esenciales al ejercicio de ese poder, deban formularse cargos específicos como fundamento para destitución, notificarse esos cargos a la persona que va a ser destituida, darse oportunidad para ser oída, y luego celebrarse una vista en que recaiga la decisión correspondiente, entonces la vista y la decisión participan también de la 'naturaleza de una investigación judicial.' McCarthy v. Emerson, 202 Mass. 352, 354. Driscoll v. Mayor of Somerville, 213 Mass. 493, 494. Swan v. Justices of the Superior Court, 222 Mass. 542, 548. State v. Common Council of Superior, 90 Wis. 612, 619. Las funciones de los miembros del concejo municipal son iguales a las de las personas que deben decidir la capacidad de los votantes, funciones que, según dijo el Juez Presidente Shaw, son 'a este respecto hasta cierto punto judiciales.' Hablando con exactitud, la destitución por parte de un concejo municipal bajo estas circunstancias es un acto ejecutivo o administrativo que debe ser llevado a cabo en este particular en forma judicial. Véase el Caso Levangie's, 228 Mass. 213."

Parece claro que en la mayoría de las ocasiones las cortes han distinguido entre el poder o facultad para destituir, y el modo o forma de ejercitar tal facultad. Y aun nos parece que el artículo 29 de la Ley Municipal, si se estudia cuidadosamente, no va más allá de crear la facultad y marcar su extensión; pero no establece la forma de proceder: fija el poder para acusar, investigar, oír y resolver, pero en realidad, no se marca el procedimiento.

El derecho, facultad o poder, de recibir los cargos y establecer u oír la acusación es de orden administrativo. La asamblea no se constituye en tribunal más que para juzgar y resolver: y hasta que el momento de juzgar y resolver llega,

la asamblea actúa en su carácter normal, esto es, como cuerpo administrativo, y no en el excepcional de cuerpo judicial. Por esa razón, estimamos que, antes de que la Asamblea Municipal de San Juan se reuniera para recibir y oír la prueba y decidir con respecto a la suspensión o la destitución del funcionario, su actuación era puramente administrativa. La facultad judicial, o cuasi judicial, que a esos cuerpos se confiere, es excepcional, y está fuera del círculo constante de sus atribuciones; las asambleas y concejos no son cuerpos u organismos judiciales, ni parte del Poder judicial del Estado, y cuando se les confiere una facultad para actuar judicialmente, esa facultad no puede interpretarse de una manera liberal, sino restringida, ya que la interpretación restringida es la apropiada para todos los casos de excepción.

En la sesión que la Asamblea Municipal de San Juan celebró en fechas 14 y 15 de agosto de 1928, el Sr. José Torres Silva, entregó, a las 10 P. M. del 15 de agosto de 1928, al Secretario un escrito dirigido a la asamblea, pidiendo se juzgara y suspendiera en su cargo al alcalde, y se dispusiera lo necesario. En esa sesión se hallaban presentes los asambleístas Doctor López Sicardó, Francisco Angleró, Pedro J. Barbosa, Ramón Cabrera, Luis A. Castro, Gonzalo Diago y Marcos Ferrer Calderón, que constituían *quorum*. El delegado o asambleísta D. Pedro J. Barbosa, pidió la suspensión del Reglamento de la asamblea y que ésta suspendiera su sesión como cuerpo deliberante y se constituyera en tribunal para oír la acusación que contra el alcalde hacía el ciudadano José Torres Silva; y la moción fué aprobada, dándose luego lectura al escrito de acusación o cargos; y entonces el delegado Sr. Castro presentó moción para que se estableciera procedimiento de impugnación contra el alcalde, teniendo como base la querella o escrito inicial, del que se debía dar copia al alcalde, fijándole término para contestar los cargos, y señalando fecha para la vista del caso, y suspendiendo de empleo y sueldo al dicho funcionario.

Cualquiera que fuere la medida que se adoptara con res-

pecto a suspensión del reglamento, ella no pudo nunca tener eficacia para convertir en acto judicial, el que, por su esencia, no tenía más carácter que el de administrativo. Que se hayan presentado cargos, no es bastante para que la asamblea se constituya *ipso facto* en tribunal. Es forzoso que recaiga previamente un acuerdo acerca de la consideración de los cargos, y de si ellos han de ser sometidos a la facultad, poder o jurisdicción judicial o cuasi judicial de la asamblea. Hubo, en este caso, una prematura constitución de la asamblea en cuerpo judicial. La moción del Sr. Castro, obtuvo el voto conforme de los delegados Sres. Barbosa, Castro, Diago y Angleró; en contra votaron los delegados Sres. Cabreras y López Sicardó; y se abstuvo el Sr. Ferrer.

Por esa moción del Sr. Castro se resolvió *"establecer un procedimiento de impugnación público contra el referido alcalde"* (cursivas nuestras): lo que hace evidente que no se había empezado procedimiento alguno. Y por ello la asamblea no estaba, ni podía estar, constituida como tribunal. (Véase el *return,* y especialmente páginas 27, 32, 33, 34 y 35 de la transcripción.)

La Corte de Distrito de San Juan, al actuar con respecto al *certiorari* de que se trata, estuvo dentro de su jurisdicción.

■ Hemos examinado la convocatoria para la sesión extraordinaria de la Asamblea Municipal de San Juan, citada para el 14 de agosto de 1928. Como una cuestión de hecho, es de declararse que no aparece entre las materias que habían de someterse a resolución de aquel cuerpo deliberante la acusación contra el alcalde, o la impugnación de éste.

Una de las primeras cuestiones que se proponen y discuten, está presentada en estos términos:

"En Puerto Rico una Asamblea Municipal no puede instituir el procedimiento de *impeachment* del Alcalde Municipal en una sesión extraordinaria que ha sido convocada para tratar y tomar acuerdos sobre asuntos enteramente ajenos y extraños al del *impeachment."*

Ambas partes en el caso argumentan este extremo como el nervio de la apelación.

No es de discutir y resolver si las asambleas municipales tienen o no el poder inherente para destituir a los alcaldes. El artículo 29 de la Ley Municipal da a esas asambleas el derecho de establecer el procedimiento de impugnación del alcalde; aunque encontramos que la redacción del precepto legal pudo ser más completa, y fijar de una manera clara el derecho a resolver, ya que fija los de oír la acusación, investigar los cargos, llamar testigos, y castigar por desacato. Pero, en el procedimiento de *impeachment* se entiende la facultad de decidir, aunque con la limitación que se establece en la Sección 2 del artículo I de la Constitución de los Estados Unidos en cuanto al *impeachment* por el Congreso; esto es, que en los casos de *impeachment,* la decisión o sentencia no puede ir más allá de la destitución y la inhabilitación para ocupar cargos de honor, confianza o provecho; sin perjuicio de que el convicto quede sujeto a juicio y condena de acuerdo con la ley. Diferénciase así la facultad administrativa de la puramente judicial, y afírmase mejor la independencia de los poderes y los sagrados límites de sus esferas de acción.

La asamblea tiene amplia oportunidad de ejercer actos de impugnación pública en sus sesiones ordinarias y quizás de otra manera; pero en las sesiones convocadas por el alcalde mismo la asamblea no puede excederse de la convocatoria.

El párrafo tercero del artículo 18 de la Ley Municipal que se cita, fija la celebración de sesiones extraordinarias, así:

"Celebrará también sus sesiones extraordinarias siempre que sea necesario, con duración de no más de dos días para todos los municipios. Estas sesiones extraordinarias serán convocadas por el Alcalde. Además, la Asamblea Municipal celebrará una sesión especial extraordinaria todos los años para considerar el presupuesto ordinario del siguiente ejercicio, y la cual durará no más de cinco días en los municipios de primera categoría, y tres en los de segunda y tercera";

Como ambas partes en el caso reconocen, no se dice en la

ley, de una manera expresa, a qué trámites vienen sujetas estas sesiones para su celebración. ¿Envuelve esto el concepto o la idea de que las asambleas municipales en lo que se refiere a la celebración de sesiones extraordinarias puedan proceder en la forma que mejor les parezca, y apartándose de la forma constante y corriente marcada por los cuerpos deliberantes? Indudablemente, no.

Creemos que a llenar ese vacío de la ley, ha venido el artículo 24 de la misma, al prescribir que las limitaciones impuestas por la Ley Orgánica de Puerto Rico a la Asamblea Legislativa y a sus miembros son aplicables, hasta donde fuere posible, a la asamblea municipal y los miembros de la misma. Si se quiere, puede estudiarse este precepto como limitativo, lo que quizá sea más conforme al propósito del legislador.

Por lo que se dispone en el Acta Orgánica de Puerto Rico, sección 33 de la misma, en las sesiones extraordinarias de la Legislatura la convocatoria es la única norma de los asuntos a considerar. Legislación que en ellas no se especifique, no puede ser tomada en cuenta.

Si esa limitación impuesta por el Acta Orgánica no encuentra, en la forma de constituirse, o de actuar, las asambleas municipales, una imposibilidad, una incompatibilidad, para su aplicación, entonces es o debe ser, regla para las sesiones extraordinarias de las dichas asambleas. Hay un motivo al par lógico y de buen gobierno, que requiere que los que han de reunirse para deliberar y resolver en lo que afecta a los intereses de una comunidad, tengan previo conocimiento, siquiera previo aviso, de cuáles son los asuntos que han de ser sometidos a su consideración. Éste es el motivo que ha informado la legislación constante en los casos de cuerpos que deliberan y resuelven y no encontramos en la ley municipal nada que pueda ser obstáculo a la aplicación de la regla general.

Encontramos, en cambio, en este caso concreto, algo que llama nuestra atención. Se convoca a la asamblea para una

sesión extraordinaria: la convocatoria contiene veinte y,seis capítulos detallando los asuntos que se han de someter a su deliberación, y entre los que no aparece la acusación contra el alcalde: la sesión empieza bajo esa convocatoria: y al segundo día de sesión se presentan los cargos contra el alcalde: y la primera medida que se toma, es la de suspender el reglamento para considerar u oír los cargos. Nos parece extraño este procedimiento, que no se emplea con respecto a otros asuntos de tanta o más importancia: al presidente de la asamblea le pareció ilegal, y así lo manifestó explícitamente (pág. 34, transcripción).

Esto no quiere decir, en manera alguna, que la asamblea municipal no tenga el derecho de recibir un pliego de cargos o acusación contra el alcalde, ya que en cualquier tiempo puede recibirse, como una función administrativa; o que deje de tener el derecho de instituir el procedimiento de *impeachment*. Pero ha de hacerse esto en forma legal, y de modo que los derechos de los asambleístas del pueblo, y del acusado, tengan las más completas garantías.

Viene el caso a reducirse a este extremo: si es de aplicación la limitación del artículo o sección 33 de la Ley Orgánica, como lo creemos, la asamblea municipal no tenía poder para tratar de ese asunto que no aparece en la convocatoria para aquella sesión.

En cuanto a las citas de autoridades que se hacen por el apelante, no estamos completamente seguros de su perfecta aplicación al caso. Así, el caso *Shugars* v. *Hamilton,* 92 S. W. 564, más que a otra cosa se refiere a la necesidad de dar aviso escrito de la celebración de una sesión especial, y a que la sesión debe celebrarse en el sitio designado previamente por ordenanza. Pero encontramos en la decisión un párrafo en el que se hace declaración de doctrina legal que debe ser tenida en cuenta: es el que sigue:

"El concejo es el cuerpo legislativo de la ciudad, y ocupa hacia ella la misma relación general que la asamblea legislativa del estado hacia sus habitantes, y es importante para el bienestar de la ciudad

y la debida administración de sus asuntos que los habitantes de ella que estén interesados en sus asuntos gubernamentales, sepan dónde y cuándo va a reunirse su cuerpo legislativo y cuándo se celebrarán sesiones extraordinarias del concejo, y cada miembro del mismo que puede ser notificado tiene derecho a que se le envíe una notificación escrita de la hora y lugar en que se celebrará cada sesión, a fin de que todos los concejales puedan estar presentes y participar de las deliberaciones del cuerpo municipal."

En el caso *Mills* v. *City of San Antonio*, 65 S. W. 1121, había una carta municipal en la que se disponía que el alcalde podía citar sesiones especiales, el objeto de las cuales debía ser sometido al consejo por escrito y enumerándose en la citación los asuntos que habían de tratarse. En este caso había ya la autoridad directa y expresa de la carta o acta.

Las autoridades no son precisas y uniformes en cuanto al extremo en discusión. Pero es un hecho que en nuestra carta orgánica aparece la limitación antes citada en cuanto a las sesiones extraordinarias. Y que esa limitación es aplicable a las asambleas municipales, nos parece también claro y lógico.

La duda que pudo caber aquí, nacía de la calidad del acto que realizó la asamblea: si él era de carácter administrativo, legislativo o judicial. En cuanto a la presentación y recepción de cargos, hemos significado que el carácter de esos actos es administrativo, y que el procedimiento, a esa altura, no tiene todavía nada que sea judicial. Y si esto es así, las limitaciones establecidas por el Acta Orgánica se extienden a las asambleas municipales, en estos casos, y ellas no pueden proceder acerca de un asunto que no aparece de la convocatoria.

Nos parece de poco peso el argumento acerca de que si hay que incluir el *impeachment* como materia de la convocatoria, el alcalde que es el posible acusado, no hará nunca una convocatoria en que tal asunto se incluya. Fuera de que eso no es más que una posibilidad, y no un hecho cierto, en cual-

quier sesión ordinaria puede tratarse de esa acusación, con y sin la voluntad del alcalde.

En consecuencia de lo expuesto, *procede revocar la resolución apelada, en el sentido de declarar con lugar el* certiorari *y nulo el acuerdo de la Asamblea Municipal, de San Juan estableciendo el* impeachment *o impugnación, que es la parte de que se apela.*